[No. D019961. Fourth Dist., Div. One. Mar. 23, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
FERNANDO SALAZAR, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III of the Discussion.

## COUNSEL

Scott A. Wahrenbrock, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley and Sara Gros-Cloren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HALLER, J.—A jury convicted Fernando Salazar of two crimes against Maria G.: (1) kidnapping for sexual purposes (Pen. Code,[2] § 208, subd. (d)) and (2) assault with intent to commit rape (§ 220). With respect to the assault count, the jury found true an allegation that Salazar kidnapped Maria for the purpose of committing the sexual offense. (§ 667.8, subd. (a).)

The jury also convicted Salazar of five unrelated counts involving kidnapping and sexual offenses against two additional victims.[3] The court imposed

---

[2]All further statutory references are to the Penal Code.

[3]These counts included (1) kidnapping for sexual purposes (§ 208, subd. (d)), (2) kidnapping for robbery (§ 209, subd. (b)), (3) forcible rape (§ 261, subd. (a)(2)), (4) robbery (§ 211), and (5) assault with intent to commit rape (§ 220). With respect to the assault crime, the jury also found true that Salazar kidnapped the victim for the purpose of committing the sexual offense. (§ 667.8, subd. (a).) Because the facts underlying these additional counts are not relevant to the issues raised on appeal, we will not discuss those facts in this opinion.

a total prison term of 20 years and 4 months and a consecutive indeterminate life term.[4]

Salazar appeals, contending (1) the evidence of asportation was insufficient to support a conviction for kidnapping with the intent to commit rape; (2) the court erred in awarding a $5,000 restitution fine; and (3) the abstract of judgment should be modified to reflect the sentence imposed by the court. For the reasons explained below, we reject the first two contentions and agree with the third. Accordingly, we affirm the judgment, with instructions to modify the abstract of judgment.

## FACTS

Maria was returning with her family from Tijuana, Mexico to their home in Mentone, California. Unlike her family, Maria was unable to legally cross the border. Maria's husband initially found a man to take Maria across the border, but after Maria entered the United States, immigration officials detained Maria and released her back to Mexico.

Salazar then approached Maria, offering to take her into San Ysidro. Maria declined because she did not trust Salazar. Maria later entered the United States with the assistance of a 14-year-old boy. The boy took Maria to a San Ysidro restaurant where Maria expected to find her husband. Maria's husband was not there. The boy left after telling Maria he would search for her husband.

Shortly thereafter, Salazar arrived and told Maria he had met with her husband and would take her to him. Salazar led Maria to a different restaurant where her husband was purportedly waiting. Salazar took Maria up the stairs of an exterior walkway of a motel adjacent to the restaurant, claiming this route was necessary to avoid detection by immigration officials. Once upstairs, Salazar told Maria to get down out of sight on the floor of the walkway.

After crouching down for a few minutes, Maria became suspicious and tried to get up. Salazar grabbed her, opened the adjacent motel room with a key, and tried to force her into the motel room. Maria grabbed on to the door but Salazar pulled her inside. Salazar closed the door and continued to pull Maria across the room. Maria struggled, knocking over several objects in the room. Salazar pulled Maria into the bathroom and shut the bathroom door. In total, Salazar forcibly moved Maria 29 feet.

---

[4]The portion of the sentence pertaining to the crimes committed against Maria consisted of an 11-year prison term for the kidnapping. The court stayed an additional six-year term on the assault count pursuant to section 654.

Once inside the bathroom, Salazar pulled down Maria's pants. Salazar said, "I want to fuck you" and grabbed Maria's vagina. Maria began screaming and bit and scratched Salazar. Salazar covered Maria's mouth with his hand. Maria thought her chances of being heard or escaping would be better if she left the bathroom so she told Salazar they should go to the bed. Salazar agreed and while in bed he got on top of Maria and grabbed her vagina. Maria resumed screaming, jumped out of bed, and threw a table at a window, shattering the glass.

The motel clerk called the police after a maintenance man reported Maria's screams. A police officer arrived at the motel room and found Salazar naked on top of Maria. Salazar was holding Maria by the arms as she was trying to free herself.

Salazar testified on his own behalf. Salazar said Maria entered the hotel room voluntarily. Salazar took off his clothes because he thought Maria wanted to have sex with him. Suddenly, Maria began screaming. Salazar sat next to Maria in an effort to calm her down.

DISCUSSION

I. *Asportation*

■ Salazar contends the evidence of asportation was insufficient to support a conviction for kidnapping with intent to rape. Salazar asserts that dragging Maria from outside the motel room door to the motel room bathroom was trivial or insignificant as a matter of law.

A. *Legal Principles*

■ In their appellate briefs, Salazar and the Attorney General disagree as to the correct standard for determining asportation with respect to a kidnapping with the intent to commit rape charge. In *People* v. *Rayford* (1994) 9 Cal.4th 1 [36 Cal.Rptr.2d 317, 884 P.2d 1369] (*Rayford*), our Supreme Court recently settled this issue. *Rayford* held kidnapping with intent to rape (§ 208, subd. (d)) is a separate crime from, and not an enhancement to, simple kidnapping (§ 207, subd. (a)). (9 Cal.4th at pp. 8-11.) Accordingly, the asportation standard is not the test applied to a simple kidnapping crime, but rather the two-pronged test used in aggravated kidnapping cases (§ 209, subd. (b)). (9 Cal.4th at pp. 11-22; see *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d].)

As stated by *Rayford*, the asportation standard for a kidnapping with the intent to commit rape requires: (1) ". . . the movement of the victim [must]

be for a distance which is more than that which is merely incidental to the commission or attempted commission of rape, . . ." and (2) "this movement [must] substantially increase the risk of harm to the victim over and above that necessarily present in the commission or attempted commission of these crimes." (*Rayford, supra,* 9 Cal.4th at p. 22.)[5]

Here, the court instructed the jury with this two-pronged aggravated kidnapping test.[6] Applying this instruction to the evidence presented at trial, the jury found the asportation standard was satisfied by Salazar dragging Maria 29 feet from the motel hallway through the motel room and into the motel bathroom.

If this finding is supported by substantial evidence, we may not disturb it on appeal. (*Rayford, supra,* 9 Cal.4th at p. 23.) Substantial evidence is reasonable, credible and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) We view the record in the light most favorable to the judgment below to determine whether it discloses substantial evidence to support the verdict. (*Ibid.*)

## B. Applying the Asportation Standard

### 1. The Movement Was Not Incidental to the Crime

The first prong of the asportation standard, whether the movement is merely incidental to the crime of rape, depends on the scope and nature of the movement. (*Rayford, supra,* 9 Cal.4th at p. 12.) Although actual distance is a factor for consideration, it is not conclusive. (*Ibid.* [". . . there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong"]; *People* v. *Daniels, supra,* 71 Cal.2d at p. 1128.) Instead, the

---

[5]In setting forth this standard, *Rayford* disapproved of our recent decision in *People* v. *Bradley* (1993) 15 Cal.App.4th 1144 [19 Cal.Rptr.2d 276], wherein we applied the test for simple kidnapping ("a movement which is neither slight nor trivial") to a kidnapping with the intent to commit rape charge. *Rayford* noted, however, that it "discern[ed] little meaningful distinction" between the simple kidnapping asportation standard (as applied by *Bradley* ) and the aggravated kidnapping standard. (*Rayford, supra,* 9 Cal.4th at p. 20.) In *Bradley,* we stated that distance is only one factor probative of asportation and that "[c]onsideration must be given to the change in surroundings between the point of capture and destination." (*People* v. *Bradley, supra,* 15 Cal.App.4th at p. 1153.)

[6]The jury instruction required movement ". . . for a substantial distance where such movement is not merely incidental to the commission of the rape, and where such movement substantially increases the risk of significant physical injuries to such person over and above those to which such person is normally exposed in the commission of the crime of rape itself." Salazar concedes this instruction was proper under *Rayford* and does not assert instructional error.

approach must focus on the "context of the environment in which the movement occurred." (*Rayford, supra,* 9 Cal.4th at p. 12.)

*Cotton* v. *Superior Court* (1961) 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241] illustrates the concept of an incidental movement.[7] In *Cotton,* a defendant charged with assault and kidnapping dragged a man 15 feet during a labor riot, seeking to force the man to join a labor strike. (*Id.* at pp. 463-464.) The court concluded the kidnapping charge was unsupported because the movement was "natural" under the circumstances of the assault and thus incidental. (*Id.* at p. 464.) In later references to *Cotton,* our Supreme Court has suggested a 15-foot movement could support a conviction for aggravated kidnapping depending on the facts of the particular case. (*People* v. *Daniels, supra,* 71 Cal.2d at p. 1131, fn. 5; see also *Rayford, supra,* 9 Cal.4th at p. 13.)

■ Here the movement of Maria was not merely incidental to the commission of rape. In contrast to *Cotton,* the movement was not natural to the crime. Salazar could have raped Maria on the walkway outside the motel room door and avoided moving her at all. The movement of Maria was not necessarily related to the rape crime itself; rather, a jury could reasonably conclude it was an essential part of Salazar's plan to avoid detection and to make the crime easier to commit. Accordingly, while the movement was perhaps incidental to Salazar's particular plan for rape, it was not incidental to the actual commission of the crime itself.

At oral argument, Salazar's counsel directed our attention to several decisions which he says require that we find the movement was incidental here. (See *People* v. *Williams* (1970) 2 Cal.3d 894 [88 Cal.Rptr. 208, 471 P.2d 1008]; *People* v. *Killean* (1971) 4 Cal.3d 423 [93 Cal.Rptr. 742, 482 P.2d 654]; *People* v. *Smith* (1971) 4 Cal.3d 426 [93 Cal.Rptr. 743, 482 P.2d 655].) Those cases are factually distinguishable since each involved an alleged kidnapping in the course of a robbery where movement was necessary to complete the crime and where the movement was essentially in a confined area.[8] By contrast here, the jury could find the movement crossed significant boundaries (from the public walkway into the motel room bathroom) and was not a necessary or a natural part of committing the rape. Thus, the movement was not incidental to the crime.

---

[7] Although *Cotton* was a case of "simple" kidnapping under section 207, its "incidental to" analysis applies with equal force in an aggravated kidnapping case. (See *People* v. *Daniels, supra,* 71 Cal.2d at pp. 1130-1131.)

[8] In *People* v. *Smith, supra,* 4 Cal.3d at page 427, the defendants compelled a hotel desk clerk to go to a second floor hotel room. In *People* v. *Killean, supra,* 4 Cal.3d at p. 423, the defendants forced the victim "to move across the threshold . . . and through various rooms" of an apartment. In memorandum opinions, the California Supreme Court held the evidence was insufficient in each case to establish the asportation element in a kidnapping for robbery charge. Although the facts were set forth in a highly abbreviated manner, it is apparent that in

## 2. The Movement Substantially Increased the Danger

 The second prong of the asportation standard requires the movement to subject the victim to a substantial increase in the risk of harm above and beyond that necessarily present in the commission or attempted commission of rape. (*Rayford, supra*, 9 Cal.4th at p. 22.) "This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes." (*Id.* at p. 13.)

Any determination of the increase in the risk of harm involves a comparison of the victim's physical location before and after the asportation. Here, Maria was initially crouched down on the exterior walkway which overlooked the motel parking lot and a city street. On the walkway, Maria was potentially visible to, and within hearing distance of, motel patrons, employees, and even the general public. From this location, Salazar dragged her into the privacy and seclusion of a motel room and shut the door. Once inside the room, the likelihood of anyone detecting Salazar decreased dramatically.[9] Moreover, in the confinement and isolation of the motel room, Salazar had Maria in a vulnerable position from which he had an enhanced opportunity to perpetrate any additional crimes he desired.

Salazar further secluded Maria by dragging her into the bathroom and shutting the door. This provided additional sound insulation and subjected Maria to still greater risk of harm.

*Rayford* found substantial evidence supporting asportation under facts no stronger than those before us. In *Rayford*, the defendant accosted the victim in the parking lot of a closed store, stated he had a gun, and led her to an area next to a short wall and a small tree. The total distance traveled was approximately 105 feet. (*Rayford, supra*, 9 Cal.4th at p. 2.) The defendant attempted to rape the victim behind the wall but she dissuaded him from

---

both *Smith* and *Killean* the defendant forced the victim to move as an essential part of committing the robberies. Likewise, in *Williams,* the defendant forced the victim from an area of a service station into the public restroom and then forced the victim to follow him through the service station to assist him in carrying tires and a tool box. *Williams* found the movements were committed "solely to facilitate the commission of the crime of robbery" and thus were incidental to the crime. (*People* v. *Williams, supra,* 2 Cal.3d at p. 902.)

In part, the distinction between cases such as *Williams, Killean,* and *Smith* on the one hand, and *Rayford* and this case on the other, rests on the nature of the underlying crime. Whereas the commission of a robbery may frequently require that a victim be moved to the property which is the object of the robbery, a rape involves solely an attack on the person and does not necessarily require movement to complete the crime.

[9]It was only through Maria's vigorous and persistent resistance that Salazar was ultimately detected.

doing so. (*Id.* at p. 6.) Although the total distance of movement was greater in *Rayford* than under the present facts, the resulting increase in isolation and risk of harm was less. The added seclusion afforded by the wall and tree was certainly less than the added seclusion Maria faced while confined in the bathroom of the motel room.

In light of these circumstances, the jury could reasonably have concluded Maria's forcible movement was not merely incidental to the attempted commission of rape, and substantially increased her risk of harm. Thus, there was sufficient evidence to support the jury verdict.

## II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed with the abstract of judgment to be modified as instructed.

Huffman, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 22, 1995.

---

*See footnote 1, *ante*, page 341.