16 Cal.Rptr.3d 231 (2004)
120 Cal.App.4th 1044
The PEOPLE, Plaintiff and Respondent,
v.
Sergio Barrera AGUILAR, Defendant and Appellant.
No. B163793.
Court of Appeal of California, Second District, Division Six.
July 22, 2004.
Rehearing Denied August 9, 2004.
Review Denied October 13, 2004.[**]
*232 Gilbert W. Lentz, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Laure H. Steuch, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
GILBERT, P.J.
Defendant forcibly moved his intended rape victim 133 feet at night into an unlit area where he was less likely to be detected. Such movement is not merely incidental to the crime of kidnapping to commit rape. It also increases the risk of harm to the victim and supports a conviction of aggravated kidnapping.
Sergio Barrera Aguilar appeals a judgment after conviction of kidnapping to commit rape and sexual penetration (Pen. Code, § 209, subd. (b)(1),[1] count one), with a finding that he used a deadly weapon (§ 12022.3, subd. (a)), among other things.
[[/]][***]
The jury made additional special findings that Aguilar personally used a knife, that he inflicted great bodily injury and that "the movement of the victim in the course of the kidnapping substantially increased the risk of harm to her." (§ 667.61, subds.(c)(5), (d)(2).)
[[/]][***]
We conclude, among other things, substantial evidence supports: 1) the conviction for aggravated kidnapping, and 2) the finding that Aguilar substantially increased the victim's risk of harm by moving her.
[[/]][***]

FACTS
Aguilar followed Nancy C., age 16, as she walked her dog down a residential street at night. He grabbed her and said "he was going to take [her] somewhere and rape [her]." He inserted his fingers in her vagina and she screamed. He then removed his hands from her vagina and pulled her 133 feet down the sidewalk past a house with a lit porch light to an area in front of a house with no light. He pushed her facedown onto the hood of a car, "put his hands down [her] pants" and inserted his fingers in her vagina.
*233 Police Officer James Ella testified that the area to which Nancy C. was moved was "extremely dark. Trees blocked "most of the illumination" coming from the light down the street. In a videotaped confession, Aguilar admitted he had grabbed Nancy C., was aroused, and put his fingers in her vagina. He said he moved ""to a place where nobody could see [them]" to have intercourse with her. He admitted that what he did was "wrong" and that Nancy C. did not consent to have sex with him. He said he had a knife with him, but he "didn't pull the knife out."
Martin Molina, a nearby resident, testified that his porch light was the "only light on the street" between the area where Aguilar first grabbed Nancy C. and the location to which she was ultimately dragged. He said the first area was lighter because trees and bushes "[funnel] the light" from his porch light to that area. They deflect light away from the area where the attack ended.
Anthony Ventura Castillo was at home when he heard a woman screaming "help, help" and "save me." He testified it was so dark he had to turn on the porch light to see what was happening. He saw Aguilar throw Nancy C. to the ground and grab her by the neck. Aguilar was holding a knife "12 or 13 inches from her neck." Castillo told him to release her. Aguilar "got up and ran." Castillo and his brother chased Aguilar and apprehended him.
[[/]][]

DISCUSSION

I. Sufficiency of Evidence for Aggravated Kidnapping (Count One)

Aguilar contends the evidence is insufficient to support the aggravated kidnapping conviction.
We view the evidence in the light most favorable to the judgment and resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. (People v. Hatch (2000) 22 Cal.4th 260, 272, 92 Cal.Rptr.2d 80, 991 P.2d 165; People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103.) "Kidnapping to commit rape involves two prongs. First, the defendant must move the victim and this asportation must not be `merely incidental to the [rape].' [Citation.]" (People v. Shadden (2001) 93 Cal. App.4th 164, 168, 112 Cal.Rptr.2d 826.) "Second, the movement must increase `the risk of harm to the victim over and above that necessarily present in the [rape].' [Citation.]" (Ibid.; People v. Rayford (1994) 9 Cal.4th 1, 12, 36 Cal.Rptr.2d 317, 884 P.2d 1369; People v. Daniels (1969) 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225.)
For aggravated kidnapping "`... there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong.'" (People v. Martinez (1999) 20 Cal.4th 225, 233, 83 Cal.Rptr.2d 533, 973 P.2d 512.) "Where movement changes the victim's environment, it does not have to be great in distance to be substantial." (People v. Shadden, supra, 93 Cal.App.4th at p. 169, 112 Cal.Rptr.2d 826.)
"[W]here a defendant moves a victim from a public area to a place out of public view, the risk of harm is increased even if the distance is short." (People v. Shadden, supra, 93 Cal.App.4th at p. 169, 112 Cal.Rptr.2d 826 [defendant moved rape victim from front area of a store in public view nine feet into a closed back room]; People v. Jones (1999) 75 Cal. App.4th 616, 629-630, 89 Cal.Rptr.2d 485 *234 [kidnapping for robbery affirmed where defendant moved victim 40 feet into a car "no longer in public view"]; People v. Smith (1995) 33 Cal.App.4th 1586, 1594, 40 Cal.Rptr.2d 31 [defendant moved victim 40 to 50 feet from a driveway "open to street view" into a camper at the rear of the house]; People v. Salazar (1995) 33 Cal. App.4th 341, 348, 39 Cal.Rptr.2d 337 [conviction for kidnapping with intent to rape affirmed where defendant moved victim 29 feet from outside walkway into a motel bathroom].)
Aguilar contends that unlike Shadden and Salazar he did not move Nancy C. into "a hidden location" such as a bathroom or a back room of a store. He says, "[t]he movement was down the sidewalk," an open area. But this distinction is not dispositive. Courts have held that moving a victim to a more isolated open area which is less visible to public view is sufficient. (People v. Diaz (2000) 78 Cal. App.4th 243, 248-249, 92 Cal.Rptr.2d 682 [defendant moved victim from a well lit area to the back of a recreation center; the court stated, "the risk to the victim in the dark isolated location of the attack increased significantly as compared to the lighted sidewalk ... where the incident began"].)
In Rayford the defendant forcibly moved the victim 105 feet at night from the parking lot of a closed store "to the other side of a wall located at the edge of the lot." (People v. Rayford, supra, 9 Cal.4th at p. 23, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) Rayford affirmed the kidnapping conviction noting that "a slender tree," 34 feet from the street, and bushes at the end of the wall "limited detection" of the victim. (Id., at pp. 6, 23, 36 Cal. Rptr.2d 317, 884 P.2d 1369.) Under these circumstances there was sufficient evidence that the forcible movement of the victim was not merely incidental to the attempted rape, but substantially increased the victim's risk of harm. (Id., at p. 23, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)
Here Aguilar forcibly moved Nancy C. 133 feet down a sidewalk at night, from an area illuminated by a porch light to an "extremely dark" area. The "risk to [Nancy C.] in the dark ... increased significantly...." (People v. Diaz, supra, 78 Cal. App.4th at pp. 248-249, 92 Cal.Rptr.2d 682.) Aguilar admitted his goal was to move her "to a place where nobody could see [them]." The movement "decreased [Aguilar's] likelihood of detection...." (People v. Rayford, supra, 9 Cal.4th at p. 13, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)
A reasonable trier of fact could infer this increased her risk by making it harder for her to escape and "enhanced [Aguilar's] opportunity to commit additional crimes." (People v. Rayford, supra, 9 Cal.4th at p. 13, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) Moreover, "[a]n increased risk of harm was manifested by appellant's demonstrated willingness to be violent...." (People v. Jones, supra, 75 Cal.App.4th at p. 630, 89 Cal.Rptr.2d 485.) He pulled Nancy C. down the sidewalk, threw her to the ground, grabbed her neck, choked her, bit her, slammed her onto a car hood, held her facedown and held a knife near her neck. He told Nancy C. that he was moving her to rape her which, when coupled with his violent acts, "pose[d] a substantial increase in the risk of psychological trauma ... beyond that to be expected from a stationary" sexual attack. (People v. Nguyen (2000) 22 Cal.4th 872, 886, 95 Cal. Rptr.2d 178, 997 P.2d 493.)
Aguilar contends that he did not complete his goal because Castillo rescued Nancy C. But that "`does not ... mean that the risk of harm was not increased [by the movement].'" (People v. Martinez, supra, 20 Cal.4th at p. 233, 83 Cal. *235 Rptr.2d 533, 973 P.2d 512.) We conclude the evidence was sufficient.

II. People v. Hoard

Aguilar cites People v. Hoard (2002) 103 Cal.App.4th 599, 126 Cal.Rptr.2d 855, which analyzes "incidental movement" much differently than we did in Shadden and our colleagues did in Salazar. He argues that under Hoard: 1) he incidentally moved Nancy C. to a more secluded place, solely to facilitate rape, and 2) his violent conduct while moving her was "inextricably connected" to his intent to rape. Aguilar's reliance on Hoard is misplaced.
Hoard involved charges of kidnapping for robbery. Defendant had moved and tied up two women employees inside a building, and then took jewelry from display cases. The women were neither physically attacked nor sexually molested. The Court of Appeal reversed the conviction concluding that the defendant's "movement of the two women served only to facilitate the crime with no other apparent purpose." (People v. Hoard, supra, 103 Cal.App.4th at p. 607, 126 Cal.Rptr.2d 855, italics added.)
Hoard criticizes Salazar and Shadden for equating the meaning of "incidental" with "necessary." Citing our reference to Alice in Wonderland in Rose v. Superior Court (2000) 81 Cal.App.4th 564, 570, 96 Cal.Rptr.2d 843, the Hoard majority portray us and our colleagues in Salazar as acting like "Humpty Dumpty" by arbitrarily ascribing our own definitions to words. (People v. Hoard, supra, 103 Cal.App.4th at p. 606, 126 Cal.Rptr.2d 855.) Our reasoning is not scrambled. The Hoard dissent supports our view that here Humpty Dumpty is not off the wall.
In Salazar, defendant dragged his victim 29 feet down a hallway to a bathroom to commit rape. The appellate court concluded that because the movement was not necessary to commit the crime, it "was not incidental to the crime." People v. Salazar, supra, 33 Cal.App.4th 341, 347, 39 Cal.Rptr.2d 337. From this Hoard concludes that Salazar defines "necessary movement" to be the same as "incidental movement," a definition at odds with Mr. Webster's definition of incidental as "subordinate, or nonessential." (People v. Hoard, supra, 103 Cal.App.4th at pp. 605-606, fn. 20, 126 Cal.Rptr.2d 855.)
As the Hoard dissent points out, "incidental" often means "necessary" in the context of the particular case. (See People v. Hoard, supra, 103 Cal.App.4th at pp. 609-612, 126 Cal.Rptr.2d 855 (dis. opn. of Ramirez, P.J.).) If a robber moves the victim 20 feet in order to reach the office safe, that movement is necessary to commit the crime, but incidental to it. The Hoard dissent notes that the majority relied on an incomplete dictionary definition of "incidental" and "necessary." (Id. at pp. 612-613, 126 Cal.Rptr.2d 855 (dis. opn. of Ramirez, P.J.).) Thus, Hoard disregarded Rayford's reminder that it consider "the context of the environment in which the movement occurred," to determine whether that movement was incidental to the crime. (People v. Rayford, supra, 9 Cal.4th at p. 12, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)
Hoard also went astray by ignoring Rayford's second prong and its rationale. "[A] primary reason forcible asportation is proscribed by the kidnapping statutes is the increase in the risk of harm to the victim that arises from the asportation." (People v. Rayford, supra, 9 Cal.4th at p. 22, 36 Cal.Rptr.2d 317, 884 P.2d 1369.)
The Hoard majority relies on cases that predate Rayford for the conclusion that "removal from the public view does not, in itself, substantially increase the risk of harm." (People v. Hoard, supra, 103 Cal. App.4th at p. 607, 126 Cal.Rptr.2d 855.) This may be true in some cases, but the *236 critical factor in Rayford's risk of harm analysis is that "the tree and the bushes at the end of the wall limited detection of the victim from the street." (People v. Rayford, supra, 9 Cal.4th at p. 23, 36 Cal. Rptr.2d 317, 884 P.2d 1369, italics added.) As Justice Ramirez notes, "the asportation element has evolved over the years" and the view expressed in Hoard is not in harmony with Rayford, Diaz and Salazar. (Hoard, at p. 615, 126 Cal.Rptr.2d 855 (dis. opn. of Ramirez, J.).) Hoard thus fails to realize there is a difference between robbery where a defendant moves a victim to target a safe, and rape where a defendant moves a victim to target her body.
Hoard is at odds with other cases involving the same issues. For example, in People v. Smith, supra, 33 Cal.App.4th at page 1594, 40 Cal.Rptr.2d 31, the Court of Appeal concluded the movement was "not merely incidental," noting "it was not necessary to move [the victim] in order to perpetrate the rape." (Italics added.) Likewise, in People v. Diaz, supra, 78 Cal.App.4th at page 248, 92 Cal.Rptr.2d 682, the Court of Appeal concluded, "The defendant could have sexually assaulted the victim in the sidewalk area where he first accosted her ... but moved the victim, as here, to avoid detection." (Italics added.) Other cases follow this approach and consider whether the movement was necessary. (People v. Martinez, supra, 20 Cal.4th at p. 232, 83 Cal.Rptr.2d 533, 973 P.2d 512, italics added ["over and above that necessarily present in the underlying crime"]; People v. Nguyen, supra, 22 Cal.4th at p. 886, 95 Cal.Rptr.2d 178, 997 P.2d 493, italics added [proper to consider substantial increase in psychological harm "beyond that to be expected from a stationary robbery" (italics added)]; see also People v. Rayford, supra, 9 Cal.4th at pp. 12, 22, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) Shadden, Smith, Diaz, Jones, Salazar, Martinez, Nguyen and Rayford are consistent.
It is doubtful Hoard would have reached the same result had Hoard moved the women to rape them. Hoard acknowledges that "a rape victim is certainly more at risk when concealed from public view and therefore more vulnerable to attack." (People v. Hoard, supra, 103 Cal.App.4th at p. 607, 126 Cal.Rptr.2d 855.) Aguilar creates a subjective "apparent purpose" test to determine whether his moving the victim was incidental. He argues his "apparent purpose" in moving the victim 133 feet was to commit the rape, and therefore the movement was "incidental" to the crime. Like the Hoard court, Aguilar confuses the two prongs of Daniels as applied in Rayford. Rayford did not speculate about the defendant's subjective "apparent purpose." Instead, it decided whether "the jury could reasonably have concluded that [the victim's] movement ... was not merely incidental" from the "totality of the circumstances." (People v. Rayford, supra, 9 Cal.4th at pp. 12, 23, 36 Cal.Rptr.2d 317, 884 P.2d 1369.) As Justice Ramirez points out, the Hoard majority's reasoning is wrong because "the defendant's intent to commit kidnapping as ... a necessary component of the target offenses is not determinate of whether the movement is incidental." (People v. Hoard, supra, 103 Cal.App.4th at p. 611, 126 Cal.Rptr.2d 855; In re Earley (1975) 14 Cal.3d 122, 130, 120 Cal.Rptr. 881, 534 P.2d 721.) He correctly notes that Hoard relied on an incomplete "dictionary definition" of "incidental," misunderstood Shadden and Salazar and created an irrelevant semantic strawman with the words "incidental" and "necessary." (Hoard, at pp. 612-613, 126 Cal.Rptr.2d 855.) Hoard erroneously claimed there is a "seeming contradiction" in Shadden regarding the incidental movement prong without mentioning that it reached this conclusion by quoting Shadden's language *237 about the second prong risk of harm. (Id., at pp. 606, 613, fn. 8, 126 Cal.Rptr.2d 855.)
The recent case of People v. Dominguez (2004) 118 Cal.App.4th 651, 13 Cal.Rptr.3d 212 traces the historical journey of the word "incidental" through the cases and concludes its meaning is paradoxical. Dominguez therefore suggests that the Legislature revisit this area of the law because our Supreme Court failed "to articulate a coherent" standard. (People v. Dominguez, supra, 118 Cal.App.4th 651, 13 Cal.Rptr.3d 212.) We believe Rayford set a clear and coherent standard. The interpretation of "incidental" depends on the facts of the particular case. In any event, the instant case is factually distinguishable from Dominguez and quite similar to Rayford. And Hoard is inconsistent with Rayford.

[[/]][]
Other than the sentencing errors we have discussed in the nonpublished part of this opinion, the judgment is affirmed.
We concur: YEGAN, and PERREN, JJ.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].
[**] Werdegar, J., dissented.
[1] All statutory references are to the Penal Code unless otherwise stated.
[***] See footnote *, ante.
[] See footnote *, ante.
[] See footnote *, ante.