Filed 9/28/15  P. v. Garcia CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIO GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. No. B259047<br>(Super. Ct. No. 2012037506)<br>(Ventura County) |

Julio Garcia appeals after a jury convicted him of forcible oral copulation (Pen. Code,[1] § 288a, subd. (c)(2)), kidnapping to commit rape (§ 209, subd. (b)(1)), assault with intent to commit rape during a burglary (§ 220, subd. (b)), attempted forcible rape (§§ 261, subd. (a)(2), 664), and elder adult abuse (§ 368, subd. (b)(1)).  As to the charge of forcible oral copulation, the jury found true the special circumstance allegation that appellant kidnapped the victim and that the movement substantially increased the risk of harm within the meaning of the One Strike Law. (§ 667.61, subds. (a) & (d)(2)).  The trial court sentenced him to a state prison term of 32 years to life plus 5 years and awarded 1,356 days presentence custody credit, consisting of 678 days actual custody credit and 678 days good conduct credit.

---

[1] All further statutory references are to the Penal Code.

Appellant contends the evidence is insufficient to support his conviction of kidnapping to commit rape and the true finding on the special circumstance allegation. In their response, the People assert that the judgment should be modified to reflect an award of 780 days presentence custody credit, consisting of 678 days actual custody credit and 102 days good conduct credit. We agree with the People and shall order the judgment modified accordingly. Otherwise, we affirm.

STATEMENT OF FACTS

*Sufficiency of the Evidence*

Appellant's convictions arise from a sexual assault he committed on his 83-year-old grandmother, M. The attack took place at M.'s house in Moorpark. M. shared her residence with J.M., who rented out part of the attached garage, and D.N. and her husband, who rented out the spare bedroom.

Prior to the attack, appellant had a good relationship with M. and visited her every week at her house in Moorpark. Appellant was homeless at the time and occasionally came over to use an outdoor shower in M.'s backyard. On the morning of the incident, M. went out to the porch at the side of her house and sat down to take her medications. Appellant arrived and told M. he was going to use the outdoor shower. After appellant took the shower, he returned to the porch and picked M. up out of her chair. M. was frightened and loudly screamed for help. She fought, kicked, and hit appellant with a plastic bottle in an effort to prevent him from taking her into the house.

M.'s efforts were not successful. Appellant carried her into the house, through the kitchen, and into her bedroom, a total distance of 31 feet and 5 inches. He threw M. on the bed, closed the bedroom door, and pulled her pants and underwear down to her knees while restraining her with his legs. Appellant pulled down his own pants and M. hit him in the head with a wooden lamp. She eventually stopped hitting appellant because she feared she would kill him. By then appellant had exposed his erect penis and was trying to penetrate M.'s vagina. M. grabbed appellant's penis and

2

continued screaming. Appellant tried to kiss her and she bit his lip as hard as she could. Appellant also unsuccessfully tried to penetrate M.'s vagina with his finger, which caused her pain. Appellant then bent down and placed his lips on M.'s vagina.

M. heard a knock on her bedroom door. J.M. opened the door, looked inside, and closed the door without doing or saying anything. Appellant then pulled on his pants and left.

D.N. testified that she and J.M. were both outside at the opposite end of the house when the incident occurred. D.N.'s husband had gone to work earlier that morning. D.N. was throwing away trash and talking to J.M. when she heard M. screaming out J.M.'s name and saying, "help me" in Spanish. J.M. and D.N. ran in the house to see what was happening. J.M. opened M.'s bedroom door and D.N. saw appellant inside the room with his pants down. J.M. closed the door after a few seconds and she and D.N. ran to their rooms. D.N. did not intervene because she was afraid. J.M. called 911. M. got on the phone during the call and told the operator that appellant had tried to rape her.

M.'s neighbor B.D. heard screams emanating from M.'s house and ran across the street to offer help. J.M. and D.N. were in the front yard but were unable to communicate with B.D. due to a language barrier. B.D. ran in the house and found M., who appeared to be in shock. M. had blood on her chest and face and told B.D. that her grandson had raped her.

M. was examined that afternoon by a nurse. M. exhibited injuries consistent with her description of the assault. Swabs taken from around her mouth, inner thighs, and left hand all contained DNA mixtures contributed by M. and, to a near-absolute certainty, appellant.

Appellant was apprehended and interviewed by the police that evening. He had a swollen lip and several red dots on the top of his head and appeared to be under the influence of alcohol. He initially claimed that M. had initiated sexual contact with him but later admitted that her account of the incident was true.

3

Appellant also said that he wanted to apologize to his grandmother and tell her "I don't know what, what came to me."

Appellant called J.M. to testify in his defense. J.M. claimed that she never heard M. screaming on the morning of the incident and that the house was silent when she opened M.'s bedroom door. Appellant was on the bed on top of M. and it appeared that his penis was in M.'s mouth. According to J.M., M. was not screaming for help and appeared to be "comfortable." J.M. claimed that she only called 911 because D.N. insisted. She also claimed that M. told her to stop talking to the police when the police arrived to interview her. J.M. admitted, however, that she told one of her daughters that appellant had raped M. She also admitted that she had yelled to neighbors across the street because she was afraid appellant might be hurting M.

Appellant testified in his own defense. He reiterated his earlier claim that his sexual contact with M. was consensual and that she initiated the encounter. According to appellant, M. hit him on the head with the lamp because she wanted him to move his penis closer to her vagina. He described M. as "aggressive, demanding," and "in control of everything." He left after J.M. opened the door because M. told him to do so. He did not wait for the police to arrive because he felt "nasty" about what had happened.

DISCUSSION

Appellant contends the evidence is insufficient to support his conviction of kidnapping to commit rape and the true finding on the One Strike Law special circumstance allegation. We disagree.

In evaluating claims of insufficient evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. (*People v. Elliot* (2005) 37 Cal.4th 453, 466 (*Elliot*).) We presume the existence of every fact supporting the judgment that the jury reasonably could deduce from the evidence, and a judgment will be reversed only if there is no

4

substantial evidence to support the verdict under any hypothesis. (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1162.) We may not substitute our judgment for that of the jury, reweigh the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

In convicting appellant of kidnapping to commit rape, the jury had to find that he moved the victim in a manner that was not merely incidental to the rape and that "the movement . . . increase[d] 'the risk of harm to the victim over and above that necessarily present in the [rape].' [Citation.]" (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168 (*Shadden*).) In finding the One Strike Law special circumstance allegation to be true, the jury necessarily found that appellant's movement of the victim *substantially* increased the risk of harm to her over and above the risk inherent in the crime of forcible oral copulation. (§ 667.61, subds. (a) & (d)(2).)

Appellant does not dispute the evidence that he picked up his 83-year-old grandmother as she was sitting on her porch, carried her a distance of over 31 feet through her house and into her bedroom, closed her bedroom door behind them, threw her on her bed, and sexually assaulted her. He claims, however, that the evidence is insufficient to establish that his movement of the victim increased or substantially increased the risk of harm to her. Indeed, he asserts that the movement actually *decreased* the risk of harm because "it is undisputed that [M.] had two tenants living in the house, [appellant] visited [M.] regularly, and it was 10:00 in the morning, when the tenants were likely to be home. Thus when he carried her from the yard into the house, he moved her from an area in public view but to an area where at least two other people were likely to be nearby. And in fact, [D.N.] and [J.M.] hearing [M.] scream and called 911."

This claim ignores the standard of review, which requires us to view the evidence in the light most favorable to the judgment. (*Elliot*, *supra*, 37 Cal.4th at p. 466.) That evidence includes D.N.'s testimony that both she and J.M. were outside

5

when the attack occurred.  The claim also ignores well-settled law.  "'[W]here a defendant moves a victim from a public area to a place out of public view, the risk of harm is increased even if the distance is short." [Citations.]"  (*People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1048; see also *Shadden*, *supra*, 93 Cal.App.4th at p. 169 ["Where movement changes the victim's environment, it does not have to be great in distance to be substantial"].)  Contrary to appellant's suggestion, the jury did not have to find he intended to increase the risk of harm or subjectively appreciated he might be doing so.

Moreover, a decreased likelihood of detection is only one of the factors to be considered in determining whether appellant's movement of M. increased or substantially increase the risk of harm to her.  Other factors include the danger inherent in the victim's foreseeable attempts to escape, the attacker's enhanced opportunity to commit additional crimes, and "'the possible enhancement of danger to the victim resulting from the movement.'"  (*People v. Rayford* (1994) 9 Cal.4th 1, 13-14.)  The jury could reasonably find that appellant's forcible movement of a kicking and screaming 83-year-old woman substantially increased the risk of physical injury.  It is also apparent that appellant substantially increased his opportunity to commit additional crimes against M. by moving her into her bedroom and closing the door.

Appellant also downplays the increased risk of psychological harm his movement of M. created.  (See *People v. Nguyen* (2000) 22 Cal.4th 872, 885-876 [the increased risk of harm element of crime of aggravating kidnapping includes both physical and psychological harm].)  As the People persuasively note, sexually assaulting M. "on her own bed, in the safe haven of her own bedroom" substantially increased the risk she would suffer emotional trauma above and beyond that inherent in the crimes of attempted rape and forcible oral copulation.  Appellant's claim of insufficient evidence thus fails.

*Presentence Custody Credits*

In their respondent's brief, the People ask us to correct an erroneous award of presentence custody credit. They correctly note that his good conduct credit is limited to 15 percent of his actual custody credit because he was convicted of a violent felony. (§ 2933.1, subd. (c); *People v. Ramos* (1996) 50 Cal.App.4th 810. 817.) The court, however, granted "day for day" conduct credit under section 4019. Appellant does not dispute this error, and we shall order the judgment modified accordingly.

## DISPOSITION

The judgment is modified to reflect an award of 780 days presentence custody credit, consisting of 678 days of actual custody credit and 102 days of good conduct credit. The trial court shall prepare an amended abstract of judgment and forward a certified copy thereof to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

7

Kevin G. DeNoce, Judge

Superior Court County of Ventura

_____


Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, Wyatt E. Bloomfield, Deputy Attorney General, for Plaintiff and Respondent.