Filed 8/14/23  P. v. Dominguez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079730 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INF1702044) |
| JOSE IVAN DOMINGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Dean Benjamini, Judge.  Affirmed.

Gordon S. Brownell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Jose Ivan Dominguez of various sex crimes arising from his kidnap and rape of two 7-year-old girls on separate occasions. He asserts we must reverse his conviction for kidnapping to commit a lewd or lascivious act of Jane Doe (Pen. Code,[1] § 209, subd. (b)(1)) because his movement of the victim was incidental to the lewd act and did not increase the risk of harm to her. We reject this contention. The evidence showed Dominguez tricked Jane out of bed, where she was sleeping with her father, led her down a hallway toward a bathroom, forced her in, locked the door, and raped her. When Jane screamed during the assault, her brother was unable to reach her because the door was locked. This was substantial evidence to support Dominguez's conviction of aggravated kidnapping. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Evidence*[2]

Jane, who was seven years old, lived in a three-bedroom house with her 13-year-old brother, J.D., and her father, E.D. On the evening of November 16, 2017, her father played music with his band outside while Jane and her brother played on their phones in the living room. Twenty-five-year-old Dominguez was among the guests who were outside listening to the music.

---

[1]    All further statutory references are to the Penal Code.

[2]    Because Dominguez's appeal implicates the substantial evidence standard of review, we summarize the evidence and state the relevant facts in the light most favorable to the judgment. (*People v. Jennings* (2010) 50 Cal.4th 616, 638.)

Around 9:00 p.m., Jane's father went back inside to go to bed. Jane joined her father and fell asleep. She often slept in her father's bed because she could not sleep alone. She was afraid someone "might come for her" in the night.

Jane was then awakened by Dominguez.[3] He was touching her ankle with his finger and whispering to her. He asked her where the bathroom was. She told him he already knew where it was, but he denied knowing and asked her to show him. When Jane got out of bed and pointed toward the bathroom, Dominguez grabbed her hand and took her out of the bedroom toward the hallway bathroom in the direction she "was telling him with [her] hand."

At the bathroom, Dominguez opened the door and told Jane to "get in." Jane said no. She told him her stomach and head were hurting. But Dominguez, who was now inside the bathroom, grabbed Jane's wrist. Jane continued to tell him her stomach and head were hurting. Then he "forced" her to get in the bathroom by "pull[ing]" her inside with both his hands. Jane grabbed the edge of the wall with her other hand to stay outside. She did not want to go into the bathroom with Dominguez because she thought "he was going to do something bad to [her]." Dominguez "pulled [her] harder."

Once they were inside the bathroom, Dominguez locked the door. He looked at Jane and told her to take off her shorts and underwear. She did. He told her to lay down on the floor, or he would kill her brother and father. She was "[s]cared," and complied. Dominguez told her to pick up her legs and grab her thighs with both hands. She complied because when she tried to say

---

[3]    Jane did not know exactly how Dominguez was related to her, but her brother explained he thought Dominguez was their uncle.

no, Dominguez got "mad." He removed his belt, boxers, and pants, and Jane saw his penis become erect. Dominguez got on his knees, told her to be quiet, and penetrated her vagina with his penis. Jane felt something hard and "it hurt."

Meanwhile, Jane's brother J.D. was outside the house. J.D. had heard Dominguez's cousin honking his car horn. When Dominguez's cousin told J.D. he was waiting for Dominguez, J.D. said he would go check inside. J.D. had earlier given Dominguez permission to use the bathroom, for the second time that night. J.D. had already told Dominguez where the bathroom was.

When J.D. got to the living room, he heard what sounded like Jane's screams. He went to his father's bedroom and saw that Jane was not in bed. J.D. then heard another scream and ran to the hallway bathroom. He tried to open the door, but it was locked. He banged on the door with his fist telling Dominguez to come out. When Dominguez opened the door, J.D. saw Jane behind the door. She was crying and looked scared. She did not have shorts or pants on, and she was bleeding down the inside of her thighs and onto her legs. Dominguez pulled up his pants zipper and held up his hands, saying, "I didn't do nothing."

J.D. screamed for his father. When E.D. woke up, he saw his son in the hallway arguing with Dominguez. Then he saw Jane bleeding down her legs and crying. Jane got into her father's bed, covered herself with a blanket, and continued to cry. She told her father and brother that Dominguez had pulled her into the bathroom where he put his "thing inside of her," which J.D. understood to mean his penis. Jane told them Dominguez threatened to kill E.D. and J.D. if she cried.

4

Jane's father called 911 right away.[4]  The Riverside County Sheriff's Department responded to the house and arrested Dominguez.  Jane was taken to the hospital by ambulance.  During the ambulance ride, Jane told a paramedic that "her uncle had picked her up from her bed and carried her to the bathroom and assaulted her in her private area."

At the hospital, Jane's sexual assault examination revealed that part of her vagina had been "torn apart" so that a vertical laceration extended from her vagina to the edge of her anus.  Jane underwent surgery to repair the injury, which required approximately 20 stitches.[5]

## II.

### *Verdict and Sentencing*

After deliberating for less than 30 minutes, the jury convicted Dominguez of all counts and associated enhancements as to both victims.  As to Jane, the jury convicted Dominguez of willful and unlawful engagement in sexual intercourse or sodomy with a person 10 years of age or younger (§ 288.7, subd. (a); count 1); kidnapping for lewd or lascivious conduct (§ 209, subd. (b)(1); count 2); lewd or lascivious acts by force or fear (§ 288, subd. (b)(1); count 3) with special allegations that Dominguez inflicted great bodily injury on Jane, who was under the age of 14, and that she was

---

[4]     The 911 call was played at trial.

[5]     Dominguez was charged with sexually assaulting a second victim, Mary Doe.  Between August and September 2017, Dominguez woke up then seven-year-old Mary, forced her into a bathroom, ordered her onto her hands and knees, and raped her.  He then forced Mary into his car and drove off with her to another location where he stopped the car and sexually assaulted her again.  Because Dominguez does not challenge his convictions for raping and kidnapping Mary, we do not discuss the evidence supporting those convictions in detail.

kidnapped for the purpose of committing a sexual offense (§§ 667.61, subds. (d)(6) and (7), (j)(1), 667.8, subd. (b)).

As to Mary, the jury convicted Dominguez of kidnapping for lewd or lascivious conduct (§ 209, subd. (b)(1); count 4); lewd or lascivious acts by force or fear (§ 288, subd. (b)(1); count 5) with special allegations that Mary was under the age of 14 and kidnapped for the purpose of committing a sexual offense (§§ 667.8, subd. (b), 667.61, subd. (j)(1)). The jury further found true the special allegation that counts 3 and 5 were committed against more than one victim (§ 667.61, subd. (e)(4)).

The trial court sentenced Dominguez to a total prison term of 30 years, plus 25 years to life, plus life without the possibility of parole. The court stayed punishment for Dominguez's convictions on counts 1, 2, and 4 pursuant to section 654.

DISCUSSION

On appeal, Dominguez challenges the sufficiency of the evidence to support his conviction for the aggravated kidnapping of Jane. Specifically, he alleges there was insufficient evidence to show his movement of Jane to the hallway bathroom satisfied the asportation requirement for aggravated kidnapping. In evaluating his claim, we review the entire record in the light most favorable to the prosecution and determine whether it contains substantial evidence from which a reasonable trier of fact could find Dominguez guilty beyond a reasonable doubt. (*People v. Rountree* (2013) 56 Cal.4th 823, 852–853.) We presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment (*People v. Jackson* (2014) 58 Cal.4th 724, 749), and we do not substitute our judgment for that of the jury or reverse merely because the evidence might also support a different finding (*People v. Hill* (1998) 17 Cal.4th 800, 849). On this record,

6

we have no difficulty concluding substantial evidence supports Dominguez's conviction for aggravated kidnapping.

Aggravated kidnapping is defined to include kidnapping for the purpose of committing a lewd or lascivious act. (§ 209, subd. (b)(1).) It requires that the defendant both move the victim "beyond that merely incidental to the commission of [the lewd and lascivious act]" and that the movement "increase[ ] the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. (b)(2).) These two requirements are not mutually exclusive but are interrelated. (*People v. Rayford* (1994) 9 Cal.4th 1, 12.) In determining if they are met in a particular case, the jury should consider "various circumstances . . . such as whether the [victim's] movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*).) The actual distance the victim is moved is also "a relevant factor, but one that must be considered in context, including the nature of the crime and its environment." (*Ibid.*)

Here, the trial court correctly instructed the jury that to find Dominguez guilty of aggravated kidnapping for the purpose of committing a lewd and lascivious act under section 209, subdivision (b), the People must prove, among other elements, that Dominguez "moved the other person or made the other person move a substantial distance" and that "[t]he other person was moved or made to move a distance beyond that merely incidental to the commission of a lewd and lascivious act." (CALCRIM No. 1203.) The court further instructed the jury that "substantial distance" meant "more than a slight or trivial distance." (*Ibid.*) "The movement must have increased the risk of physical or psychological harm to the person beyond that

7

necessarily present in the commission of the lewd and lascivious act," and "[i]n deciding whether the movement was sufficient, [the jury must] consider all the circumstances relating to the movement." (*Ibid.*)

We presume the jury followed the instructions given to it (*People v. Case* (2018) 5 Cal.5th 1, 32), and conclude there was substantial evidence supporting the jury's necessary findings that Dominguez moved Jane a "substantial distance" that was "beyond that merely incidental to the commission of a lewd and lascivious act." (CALCRIM No. 1203.) The evidence showed Dominguez grabbed Jane's hand and led her down the hallway away from the safety of her father. Once at the bathroom door, Dominguez forced Jane inside by grabbing her wrist with both his hands and pulling her inside despite her pleas. When she tried to physically resist, Dominguez pulled her harder until she was inside the bathroom with him. He then locked the door before raping her. By forcing Jane into the bathroom where Dominguez could close and lock the door, he decreased the likelihood that his rape of Jane would be seen or heard by her father or brother, increased the danger inherent in any attempt by Jane to escape, and enhanced his opportunity to commit additional crimes. (*Dominguez*, *supra*, 39 Cal.4th at p. 1152.) This is sufficient evidence to satisfy the asportation requirement of aggravated kidnapping.

Dominguez suggests that because Jane's brother ultimately found and rescued Jane from the bathroom, his movement of Jane into the bathroom did not decrease the likelihood that he would be caught. We reject this contention. To the contrary, the evidence showed that because Jane was locked in the bathroom, her brother could not initially find her. Had he not heard Jane scream another time despite Dominguez's threats to Jane to stay silent, it would have taken longer for J.D. to locate Jane, giving Dominguez a

8

greater opportunity to commit additional crimes and increasing the likelihood of greater harm to Jane.

Dominguez further complains that the jury did not hear evidence of the "specific distance" between the father's bedroom and the bathroom. He asserts the testimony indicated the hallway to the bathroom " 'wasn't very long.' " But an aggravated kidnapping conviction does not require evidence of a particular distance. (See, e.g., *People v. Martinez* (1999) 20 Cal.4th 225, 233 ["[T]here is no minimum number of feet a defendant must move a victim" for aggravated kidnapping.], overruled on a different point as stated in *People v. Fontenot* (2019) 8 Cal.5th 57, 70.)

Moreover, although the evidence shows that the distance Dominguez moved Jane was relatively short, we are not persuaded it was insufficient to support his aggravated kidnapping conviction. Rather, as the People contend, the movement here is analogous to that in *People v. Shadden* (2001) 93 Cal.App.4th 164, 169. There, the appellate court concluded that the defendant's dragging of the store owner victim only nine feet from the store's front counter into the store's small back room for the purpose of raping her was sufficient to support the aggravated kidnapping conviction. Like the movement in *Shadden*, by confining and concealing Jane in a different room out of her family's sight—even a short distance down the hallway— Dominguez enhanced his opportunity to rape and injure her. (See *id.* at p. 170 [noting "the common critical factor [in several aggravated kidnapping cases] was that the defendant either secluded or confined the victim" and that by placing the store owner victim out of public view, Shadden had "decreased the odds of detection . . . [and] enhanced his opportunity to rape and injure her," citation omitted].)

9

We are likewise unpersuaded by Dominguez's remaining contention—that his moving of Jane was merely "incidental" to the underlying lewd act and thus, was insufficient to support an aggravated kidnapping conviction. Dominguez relies on *People v. Hoard* (2002) 103 Cal.App.4th 599, 606 (*Hoard*), in which the appellate court reversed convictions for aggravated kidnapping for robbery. There, the defendant moved two employees to the back of the building and tied them up before stealing jewelry from the store's display cases. The *Hoard* court reasoned that moving the employees "served only to facilitate the crime with no other apparent purpose," and thus, the movement was merely incidental to the commission of the robbery and could not support the aggravated kidnapping convictions. (*Id.* at pp. 606–607.)

Dominguez highlights the *Hoard* court's criticism of *Shadden* that "moving the victim [in *Shadden*] to the back room facilitated the rape and thus . . . could properly be regarded as incidental to the main crime." (*Hoard*, *supra*, 103 Cal.App.4th at p. 606.) We are not persuaded that *Hoard* requires a different conclusion on the facts before us. As other courts have since explained, the reasoning in *Hoard* is "at odds with other cases involving the same [aggravated kidnapping] issues." (*People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1050–1052.) Further, because *Hoard* concerned a kidnapping to commit a robbery, not a kidnapping to commit a lewd and lascivious act against a child, we find it distinguishable from the facts present here. (See also *Aguilar*, at p. 1051 ["*Hoard* thus fails to realize there is a difference between robbery where a defendant moves a victim to target a safe, and rape where a defendant moves a victim to target her body."].) Indeed, even the *Hoard* court acknowledged that moving a rape victim out of public view may tend to establish the increased harm element of aggravated kidnapping because "a rape victim is certainly more at risk when concealed

10

from public view and therefore more vulnerable to attack." (*Hoard*, at p. 607; see also *Aguilar*, at p. 1052 ["It is doubtful *Hoard* would have reached the same result had [the defendant] moved [the employees] to rape them."].)

Moreover, reviewing the entire record in the light most favorable to the judgment as we must, we conclude substantial evidence supports the jury's finding that Jane's movement was not merely incidental to the underlying lewd act. The evidence showed that Dominguez pretended not to know how to find the bathroom—which he had already used once before that night—so that he could trick[6] Jane out of bed and force her into the bathroom to sexually assault her. As discussed previously, the jury reasonably could have found that moving Jane out of sight from her family and confining her in a locked bathroom helped Dominguez avoid detection and increased the risk of harm to Jane. And as the People contend, moving Jane to the bathroom was not necessary for Dominguez to commit a lewd act on Jane. He could have simply "willfully touched any part of [Jane's] body either on the bare skin or through the clothing" with the intent of "arousing, appealing to or gratifying the lust, passions or sexual desires of himself or [Jane Doe]" while she lay asleep next to her father. (CALCRIM No. 1203.)

---

[6]     As the People note, Dominguez did not argue in his opening brief that the movement requirement was vitiated by Jane voluntarily walking him down the hall to the bathroom. Consequently, that argument is forfeited. (See *People v. Failla* (2006) 140 Cal.App.4th 1514, 1519, fn. 3 [generally, appellate court need not consider points raised for the first time in reply brief].) But even if we considered the argument, we would reject it. On this record, a reasonable jury could find Dominguez tricked Jane into showing him the bathroom, and any initial voluntariness obtained through deceit was vitiated when he forced her into the bathroom and locked the door. (See, e.g., *People v. Hovarter* (2008) 44 Cal.4th 983, 1017 [even assuming victim voluntarily accepted ride with defendant, victim's voluntariness was vitiated when he refused to release her from the car].)

11

For these reasons, we conclude substantial evidence supported the jury's finding that Dominguez was guilty of the aggravated kidnapping of Jane.

## DISPOSITION

The judgment is affirmed.


DO, J.

WE CONCUR:


DATO, Acting P. J.


RUBIN, J.