Filed 6/14/23

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> RUSIATE KOLILOA WAQA, <br><br>     Defendant and Appellant. | A163761 <br><br> (Sonoma County <br> Super. Ct. No. SCR-730833-1) |

A jury convicted defendant Rusiate Waqa of forcible rape after he sexually assaulted a woman in a public restroom. Because Waqa moved the victim from the restroom's small stall to its large stall before raping her, the jury also found true an aggravated kidnapping circumstance under the One Strike law, Penal Code section 667.61 (the aggravated kidnapping circumstance), requiring a sentence of 25 years to life in prison for the rape.[1] (See § 667.61, subds. (a), (d)(2).)

On appeal, Waqa claims the aggravated kidnapping circumstance cannot stand because there was insufficient evidence of its asportation element, which requires that "the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense." (§ 667.61, subd. (d)(2).)

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

[1] All further statutory references are to the Penal Code.

1

Although we agree with him, that does not end the matter because the One Strike law requires a term of 15 years to life for qualifying sexual offenses if the defendant commits a simple kidnapping of the victim under section 207 (the kidnapping circumstance). (§ 667.61, subds. (b), (e)(1).) By finding the aggravated kidnapping circumstance true, the jury necessarily determined that Waqa committed a simple kidnapping of Doe, a finding that *was* supported by substantial evidence.

We hold that where there is insufficient evidence of a circumstance supporting a 25-year-to-life term under the One Strike law but sufficient evidence of a lesser included circumstance supporting a 15-year-to-life term, an appellate court may reduce the sentence to the lesser term. We therefore modify the judgment here to reduce the 25-year-to-life term based on the aggravated kidnapping circumstance under section 667.61, subdivision (d)(2) (section 667.61(d)(2)), to a 15-year-to-life term based on the kidnapping circumstance under section 667.61, subdivision (e)(1) (section 667.61(e)(1)). We reject Waqa's remaining claim of prosecutorial error, order the correction of the conviction date in the abstract of judgment, and otherwise affirm.[2]

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Around 7:45 a.m. on August 16, 2019, 55-year-old Jane Doe arrived at Howarth Park in Santa Rosa, where she regularly walked for exercise. She

---

[2] Waqa also contends the trial court erred by giving a modified version of CALCRIM No. 3175, the instruction on the aggravated kidnapping circumstance. We need not address this claim because it involves an element of the aggravated kidnapping circumstance—a substantial increase in the risk of harm—that is not an element of the kidnapping circumstance under section 667.61(e)(1). In turn, we also need not address Waqa's claim of cumulative error, which is based on only this alleged instructional error and the alleged prosecutorial error.

parked her car in a small lot, facing the park. She got out of the car and went to use the public restrooms, which are in a standalone building a short distance from the parking lot. The men's restroom faces the parking lot and the women's restroom is on the building's back side.

Doe entered the women's restroom, which has two stalls, a small one and a larger one for people with disabilities.[3] The restroom's outer door is made of open bars, and it was propped open that morning. Upon entering the restroom, one must turn right and go around a corner to reach the stalls.

The two stalls are partially formed by partitions that do not extend all the way to the floor or ceiling of the restroom. The small stall is a rectangle made up of a structural wall in the back, two partitions perpendicular to the back wall, one of which is shared with the larger stall, and a stall door parallel to the back wall. The large stall is a right-angled trapezoid made up of the partition it shares with the small stall, a stall door that continues in line with this partition, and three structural walls.[4] One of these walls does not extend all the way to the floor or ceiling of the restroom, creating gaps to the outdoors. The two stalls' doors form an "L," so when exiting the small stall, the large stall's door is immediately to one's left. Like the stall partitions, both stall doors do not extend all the way to the floor or ceiling.

Doe did not see anyone else in the women's restroom when she went in. She entered the small stall, closed and locked the door behind her, and used

---

[3] A police officer's body-camera recording of the women's restroom made soon after the rape was admitted and played for the jury. We reviewed this recording.

[4] Not all of the restroom's dimensions were measured, but a police officer testified that the large stall is seven and a half feet long and five feet wide, and its door opening is also about five feet wide. The small stall is about three feet long and two and one third feet wide, which is also about the width of its door opening.

3

the toilet. After finishing, she opened the stall door, which opens inward, and saw a man later identified as 23-year-old Waqa. He was facing her from about three feet away, blocking her from exiting the stall. Doe testified that Waqa "was big, both height-wise . . . [and] horizontally," and "by far" larger than she.[5]

"[S]cared out of [her] wits," Doe tried to "dart for the door," but she was unable "to get past" Waqa. He grabbed her arm and held her as, now outside the small stall, she screamed and struggled. Doe testified that Waqa told her "he was going to kill [her]" and made a "finger gun gesture."

Waqa then "dragged" Doe, who was still screaming and struggling, into the large stall. He locked the stall door behind them and pushed her against the wall facing the stall door. Waqa then pushed Doe to the ground. As she attempted to "reach for the [stall] door to exit," he grabbed her and dragged her backward, toward the toilet. She ended up on the ground in the stall's back corner, next to the toilet on the side farthest from the restroom exit.

Waqa pulled down Doe's pants and underwear, pulled down his own pants, and raped her. Doe testified that she had her eyes closed and "was gasping for breath" as he laid on her, feeling as if she was being "asphyxiated." During the rape, Doe felt both Waqa's hands and penis inside her vagina, and he ejaculated into her. DNA testing later confirmed the presence of Waqa's semen in Doe's vagina. Her arm, chest, and thigh were significantly bruised.

---

[5] The jury saw Doe in person, and photographs in the record suggest she is of smaller stature, but no evidence was presented of her specific height or weight. One witness testified that at the time of the crime, Waqa was at least six feet tall and over 200 pounds.

After the rape, Waqa left the women's restroom. Doe then left as well, returned to her car, and drove home. Around 8:15 a.m., she called 911 and reported the crime.

The subsequent police investigation revealed that Waqa approached two other women in the Howarth Park parking lot, one before Doe's rape and one after, and persistently but unsuccessfully propositioned both women for sex. One of those women photographed the license plate of the car Waqa drove away from the park, which allowed the police to locate and eventually arrest him. Doe and one of these women identified him in photographic line-ups, and the third woman identified him at trial. Doe also identified him in an infield show-up.

Waqa was charged with a felony count of forcible rape and an accompanying aggravated kidnapping circumstance under the One Strike law.[6] The jury convicted him of the charge and found true the aggravated kidnapping circumstance. As required under the One Strike law, the trial court then sentenced him to 25 years to life in prison for the rape.

---

[6] The rape charge was brought under section 261, subdivision (a)(2), and an enhancement for "**AGGR[A]VATED KIDNAPPING**" was alleged under section 667.61, subdivisions (a) and (e). In fact, the enhancement should have been alleged under subdivisions (a) and *(d)*, as proving one of the circumstances listed in subdivision (d) requires a sentence of 25 years to life under subdivision (a), whereas proving one of the circumstances listed in subdivision (e) requires a sentence of 15 years to life under subdivision (b). Nonetheless, the parties and trial court proceeded as if the greater enhancement was charged, and Waqa does not claim that the information failed to give him "fair notice of the qualifying statutory circumstance . . . being pled, proved, and invoked in support of One Strike sentencing." (*People v. Mancebo* (2002) 27 Cal.4th 735, 753–754 (*Mancebo*).)

5

## DISCUSSION

A. *The Aggravated Kidnapping Circumstance Cannot Stand Because There Was Insufficient Evidence that the Movement of Doe Substantially Increased Her Risk of Harm.*

Waqa claims that the aggravated kidnapping circumstance must be reversed because there was insufficient evidence either that the movement of Doe was substantial or that it substantially increased her risk of harm. We disagree with the first point, but agree with the second. There was substantial evidence that forcing Doe into the large stall involved movement of a substantial distance (i.e., enough evidence to support the kidnapping circumstance), but there was insufficient evidence that the movement substantially increased her risk of harm (i.e., not enough evidence to support the aggravated kidnapping circumstance), even if it may have slightly increased the risk in some respect. Thus, we reduce the sentence to 15 years to life based on the lesser kidnapping circumstance.[7]

### 1. General legal standards

In evaluating a claim of insufficient evidence, " 'we review the whole record to determine whether . . . [there is] substantial evidence to support the verdict . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) " ' " 'If the circumstances reasonably justify the trier of fact's

---

[7] At our request, the parties submitted supplemental briefing on the propriety of this disposition, as well as the error in the information discussed in footnote six, *supra.*

findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (*In re George T.* (2004) 33 Cal.4th 620, 631.)  Thus, we must affirm " ' "unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*Manibusan,* at p. 87.)

We begin with an overview of the law pertaining to asportation, the only element of kidnapping at issue here.  In doing so, we focus on three statutes:  section 207, subdivision (a), which establishes the crime of simple kidnapping; section 209, subdivision (b), which establishes the crime of kidnapping for robbery, rape, or other sex crimes (kidnapping for robbery or rape); and the One Strike law, under which Waqa was sentenced, which requires an increased term for convictions of certain sexual offenses if the defendant kidnapped the victim.  In particular, if the defendant committed a simple kidnapping of the victim under section 207, subdivision (a), the required term for the sexual offense is 15 years to life (§ 667.61, subds. (b), (e)(1)), and if the movement also substantially increased the risk of harm to the victim, the required term is 25 years to life (§ 667.61, subds. (a), (d)(2)).

The asportation elements of these forms of kidnapping overlap, with the aggravated kidnapping circumstance requiring the greatest showing.  Simple kidnapping, and thus the kidnapping circumstance, requires movement of a substantial distance.[8]  Kidnapping for robbery or rape requires that the movement increased the risk of harm to the victim.  And the aggravated kidnapping circumstance requires that the movement

---

[8] The kidnapping circumstance may be established by forms of kidnapping other than simple kidnapping, such as kidnapping during a carjacking under section 209.5.  (§ 667.61(e)(1).)  Still, a common element of all kidnappings is movement of a substantial distance.

7

*substantially* increased the risk of harm to the victim. In analyzing the sufficiency of the evidence here, we rely on authorities discussing all three of these different asportation elements.

The One Strike law "provides an alternative, more severe set of penalties for certain sex offenses committed under certain enumerated circumstances." (*People v. Anderson* (2020) 9 Cal.5th 946, 954 (*Anderson*).) A One Strike term is " ' "an alternate penalty for the underlying felony itself," ' " not a sentence enhancement that adds " ' " 'an additional term of imprisonment' . . . to a 'base term.' " ' " (*People v. Salvador* (2017) 11 Cal.App.5th 584, 592–593, italics omitted.) The statute is designed "to ensure serious sex offenders receive lengthy prison sentences upon their first conviction when their crimes are committed under circumstances elevating their victim's vulnerability." (*People v. Kelly* (2016) 245 Cal.App.4th 1119, 1128 (*Kelly*).) Forcible rape, the crime of which Waqa was convicted, is a qualifying sexual offense under the statute. (§ 667.61, subd. (c)(1).)

The aggravated kidnapping circumstance requires that "[t]he defendant kidnapped the victim of the present [sexual] offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense." (§ 667.61(d)(2); see *People v. Perkins* (2016) 5 Cal.App.5th 454, 465 (*Perkins*).) Similarly, kidnapping for rape or robbery requires a simple kidnapping in which the movement "increase[d] the risk of harm to the victim over and above that necessarily present in . . . the intended underlying offense." (§ 209, subd. (b)(1)–(2); see *People v. Rayford* (1994) 9 Cal.4th 1, 11–12.)

The kidnapping circumstance may be proven by showing that "the defendant kidnapped the victim of the present [sexual] offense in violation of

8

Section 207," e.g., committed a simple kidnapping. (§§ 667.61(e)(1), 207, subd. (a).) For simple kidnapping, the asportation element requires that the defendant moved the victim "a ' "substantial distance" ' [citation], not a distance that is ' "trivial." ' " (*People v. Gomez* (2018) 6 Cal.5th 243, 304.) Originally, this standard depended exclusively on the actual distance moved. (*Ibid.*) But in 1999, our state Supreme Court held that a factfinder "should instead consider the 'totality of the circumstances' in determining whether the victim was moved for a ' "substantial distance," ' including factors such as 'whether that movement increased the risk of harm above that which existed prior to the asportation, decreased the likelihood of detection, and increased both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes.' " (*Ibid.*, quoting *People v. Martinez* (1999) 20 Cal.4th 225, 237 (*Martinez*).) Thus, under current law, "no minimum distance is required to satisfy the asportation requirement," and the precise distance need not be proven. (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*); see *People v. Nieto* (2021) 62 Cal.App.5th 188, 200; *People v. Singh* (2019) 42 Cal.App.5th 175, 187–188.)

The asportation element of these three forms of kidnapping tied to the commission of another crime (simple kidnapping committed in conjunction with another offense; kidnapping for rape or robbery; and the aggravated kidnapping circumstance) requires that the movement be " 'more than that which is merely incidental to the commission or attempted commission of [the associated crime].' " (*Dominguez, supra*, 39 Cal.4th at p. 1150; *Martinez, supra*, 20 Cal.4th at p. 237; *People v. Rayford, supra*, 9 Cal.4th at p. 12; *Perkins, supra*, 5 Cal.App.5th at pp. 469–470; § 209, subd. (b)(2).) "[I]ncidental movements are brief and insubstantial, and frequently consist of

9

movement around the premises where the incident began. [Citations.] By contrast, relatively short distances have been found not to be incidental where the movement results in a substantial change in 'the context of the environment.'" (*People v. Diaz* (2000) 78 Cal.App.4th 243, 247.)

Kidnapping for robbery or rape and the aggravated kidnapping circumstance also require that the movement increased the risk of harm to the victim beyond that inherent in the underlying offense, with the aggravated kidnapping circumstance further requiring that the increase was substantial.[9] (§§ 209, subd. (b)(2), 667.61(d)(2); *Robertson*, *supra*, 208 Cal.App.4th at p. 982.) "[T]he increased risk may be of either physical or psychological harm." (*Robertson,* at p. 984.) In contrast, for simple kidnapping an increase in the risk of harm to the victim is *relevant* to whether the victim was moved a substantial distance, but the crime does not *require* "an increase in harm, or any other contextual factors." (*Martinez*, *supra*, 20 Cal.4th at p. 237; *People v. Bell* (2009) 179 Cal.App.4th 428, 436.) Thus, compared to simple kidnapping, the "essence" of both kidnapping for robbery or rape and the aggravated kidnapping circumstance "is the increase in the risk of harm to the victim caused by the forced movement." (*Dominguez*, *supra*, 39 Cal.4th at p. 1152.)

---

[9] Until 1997, kidnapping for robbery or rape also required that the movement substantially increase, not just increase, the risk to the victim beyond that inherent in the underlying crime. (*Perkins*, *supra*, 5 Cal.App.5th at pp. 466–467 & fn. 4; *People v. Robertson* (2012) 208 Cal.App.4th 965, 979–980 (*Robertson*).) Thus, we rely on cases applying the pre-1997 standard for kidnapping for robbery or rape in determining whether Waqa's movement of Doe substantially increased the risk of harm to her (see *Perkins*, at p. 466, fn. 4), as well as later decisions addressing that crime to the extent they elucidate what an increase in the risk of harm requires.

To summarize, the asportation element of the aggravated kidnapping circumstance requires proof that "(1) the movement was substantial in character, and not merely incidental to the commission of the sex crime [citation], and (2) 'the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying' sex offense." (*Perkins*, *supra*, 5 Cal.App.5th at p. 466, quoting § 667.61(d)(2); *Dominguez*, *supra*, 39 Cal.4th at p. 1150; CALCRIM No. 3175.) These two prongs "are not distinct, but interrelated, because a trier of fact cannot consider the significance of the victim's changed environment without also considering whether that change resulted in an increase in the risk of harm to the victim." (*Martinez*, *supra*, 20 Cal.4th at p. 236.) As we now explain, here evidence of the second prong is lacking, but there is sufficient evidence of the first prong, which is all that is required to establish asportation for the kidnapping circumstance.

> 2. No substantial evidence supports the finding that the movement substantially increased the risk of harm to Doe.

Beginning with the second prong, we agree with Waqa that there was insufficient evidence that his movement of Doe from the small stall to the large stall "substantially increased the risk of harm" to her above that inherent in the rape.[10] (§ 667.61(d)(2).) Even assuming the minor differences between the stalls supported a finding of *some* increase in the risk of harm to Doe, there was no evidence from which to reasonably infer that the movement *substantially* increased that risk.

---

[10] The record is ambiguous about Doe's location when Waqa began moving her, as some of her testimony suggests he did not grab her arm until she was outside the small stall. The parties agree that the relevant movement of Doe was from the small stall to the large stall, however, and Doe's precise location when the movement began does not affect our ultimate conclusions.

" 'Substantial' is a relative term[;] its measure [is] to be gauged by all the circumstances surrounding the matter in reference to which the expression has been used." (*Atchison etc. Ry. Co. v. Kings Co. Water Dist.* (1956) 47 Cal.2d 140, 144.) When describing an increase, "substantially" is defined as "[f]ully, amply; to a great extent or degree; considerably, significantly, much." (Oxford English Dictionary Online <https://www.oed.com/view/Entry/193055> [as of June 13, 2023].) In determining whether a movement increased the risk of harm to the victim, the jury considers " ' "such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. [Citations.] The fact that these dangers do not in fact materialize does not . . . mean that the risk of harm was not increased." ' " (*People v. Vines* (2011) 51 Cal.4th 830, 870 (*Vines*).)

Although the movement of Doe from the small stall to the large stall may have made it easier for Waqa to complete the rape, there was insufficient evidence that the change substantially increased Doe's risk of harm. *Perkins* is instructive. There, the defendant committed sex crimes against his 11-year-old stepdaughter, and the jury also found true aggravated kidnapping and kidnapping circumstances under the One Strike law. (*Perkins*, *supra*, 5 Cal.App.5th at pp. 459–460, 463.) The victim was asleep in the living room of their apartment when the defendant awakened her and asked her to feed her baby sister, who was in the bedroom. (*Id.* at pp. 459–460.) The defendant told the victim to go to the bathroom, where he sodomized her. (*Id.* at p. 460.) He then told her to go back to the bedroom, which was 10 to 30 feet away. (*Id.* at pp. 460, 470.) The victim complied

12

because she was afraid the defendant would hurt her otherwise, and he sodomized and raped her in the bedroom. (*Id.* at p. 460.)

The Third District Court of Appeal reversed the One Strike findings, concluding there was insufficient evidence that by ordering the victim from the bathroom to the bedroom the defendant moved her "a substantial distance and in a manner that substantially increased the risk of harm." (*Perkins, supra,* 5 Cal.App.5th at p. 464.) The movement did not decrease the likelihood of detection, since neither room's doors were closed during the crimes and the victim was not visible from either room. (*Id.* at p. 470.) Nor did it increase the danger from the victim's foreseeable attempts to escape, since the "defendant's significant size" made it "unlikely the victim could have escaped from him in either the bathroom or the bedroom. The bedroom, assuming it was larger, may have actually given her more of an opportunity." (*Ibid.*) Finally, the movement did not enhance the defendant's opportunity to commit other crimes, because "[n]othing show[ed] [he] could not have committed rape in the bathroom" or was prevented from committing "whatever crime he wanted in both rooms." (*Ibid.*)

Likewise, the movement of Doe from the small stall to the large stall did not appreciably "decrease[] the likelihood of detection." (*Perkins, supra,* 5 Cal.App.5th at p. 470.) Generally, this factor is supported when the offender moves the victim from a public or open area to a private or secluded area. (See, e.g., *Dominguez, supra,* 39 Cal.4th at p. 1153 [victim moved from road to embankment below road "where it was unlikely any passing driver would see her"]; *People v. Shadden* (2001) 93 Cal.App.4th 164, 167, 169–170 (*Shadden*) [victim moved from store's front counter to back room]; *People v. Salazar* (1995) 33 Cal.App.4th 341, 348 [victim moved from exterior walkway to motel room's bathroom].) "[A] rape victim is certainly more at risk when

13

concealed from public view and therefore more vulnerable to attack."
(*People v. Hoard* (2002) 103 Cal.App.4th 599, 607.)

Here, however, the degree of concealment each stall offered did not significantly differ. Both stalls have locking doors and partitions that do not extend to the floor or ceiling. Although the small stall is a few feet closer to the restroom entrance, we do not think that Doe's movement to the large stall made it substantially less likely that someone entering the restroom would hear or see the rape. Moreover, only the large stall has openings to the outdoors, so if anything the movement to that stall made it more likely that someone outside would notice the crime.

The movement also did not substantially "increase[] the danger in the victim's foreseeable attempts to escape." (*Perkins*, *supra*, 5 Cal.App.5th at p. 470.) Neither stall afforded a realistic opportunity to escape over or under a wall or door. Although committing the rape in the small stall would have placed Doe nearer to the stall door than she was in the large stall, the additional space in the large stall theoretically gave her more room to maneuver and would make it easier to unlock the door if she was able to reach it. (See *ibid.*) Nor was a potential escape from the large stall any more dangerous than one from the small stall. (Compare, e.g., *Kelly*, *supra*, 245 Cal.App.4th at p. 1130 [movement put victim at increased risk of harm because her "only option to escape was to exit a moving vehicle"].)

In arguing that the movement did "decrease[] the likelihood of detection and escape," the Attorney General relies on an unconvincing premise: that because of his size, Waqa "would not be able to fit inside the small stall with the victim and still be able to close the door behind him and lock it." We agree with Waqa that the jury could not have reasonably inferred that it was impossible for him and Doe to both fit in the small stall

14

with the door locked behind them. The only quantitative evidence of Waqa's size was that he was at least six feet tall and 200 pounds at the time of the crime, hardly too big to get through the stall door. Although it would have been cramped for him and Doe to both be in the small stall with the door locked shut, there is no basis to believe that they literally would not have fit. Thus, we disagree with the Attorney General that the movement to the large stall increased Waqa's ability to avoid detection and prevent Doe from escaping in that he otherwise could not have closed and locked the stall door.

More generally, the risk of harm beyond that inherent in the rape was not clearly increased in the large stall compared to the small stall. The large stall itself did not pose any danger of bodily harm that the small stall did not. (Compare, e.g., *Vines, supra*, 51 Cal.4th at p. 871 [victims at substantially increased risk of harm because they were moved into store's freezer].) Both spaces had fixtures, including the toilets, with which Doe could have collided. Indeed, she was arguably at higher risk of such injury in the more enclosed space.

Nor did the movement to the large stall clearly enhance Waqa's ability to "gain control over [Doe] and ensure[] her compliance." (*Robertson, supra*, 208 Cal.App.4th at p. 985 [movement of victim next to deep tub was implicit threat to drown her if she resisted].) True, in the large stall Waqa was able to lie on top of Doe, which he likely would not have had room to do in the small stall. In turn, his weight made it hard for her to breathe, which it is reasonable to infer prevented her from screaming. But rape does not require a prone position, and there is no apparent reason Waqa could not have restrained Doe and prevented her from screaming while they were upright. (See *Perkins, supra*, 5 Cal.App.5th at p. 470.)

We also reject the Attorney General's related argument that the movement to the large stall significantly "increased the risk of psychological harm" to Doe, based on her testimony that she became "terrified" and felt less safe when Waqa closed and locked the stall door. Again, this argument depends on the premise that Waqa would not have been able to lock himself and Doe into the small stall. We do not see any reason the psychological harm of "being trapped in an enclosed space with a large, strong male stranger" would differ substantially based on whether the confinement was in the small or large stall.

Finally, we conclude there was insufficient evidence that the movement to the large stall enhanced Waqa's "opportunity to commit additional crimes" such that it substantially increased the risk of harm to Doe. (*Perkins*, *supra*, 5 Cal.App.5th at p. 470.) The Attorney General claims that "having the larger space could have allowed [Waqa] to, for example, orally copulate the victim, which he would not have been able to accomplish in the smaller stall." Although we disagree with Waqa that this factor is not met because there was no evidence he intended to commit such a crime, there is no substantial evidence that he would have been unable to orally copulate Doe or accomplish "whatever crime he wanted" in the small stall. (*Ibid.*) It may have been easier for him to sexually assault her in the larger space, but either way he had essentially the same opportunity to commit other crimes, particularly since the two stalls did not significantly differ in the opportunities they afforded for detection or escape.

      3.      There was sufficient evidence of simple kidnapping.

Having concluded there was insufficient evidence of the second prong of the aggravated kidnapping circumstance's asportation element, we turn to consider the evidence supporting the first prong. Again, this prong, like a

16

conviction of simple kidnapping, requires evidence that the movement was of a substantial distance, as well as that the movement was not merely incidental to the sexual offense. (*Martinez*, *supra*, 20 Cal.4th at p. 237; *Perkins*, *supra*, 5 Cal.App.5th at pp. 465–466.) In evaluating whether the movement was substantial, "the jury considers the 'scope and nature' of the movement, which includes the actual distance a victim is moved." (*Vines*, *supra*, 51 Cal.4th at p. 870.) The factors that bear on whether a movement increased the victim's risk of harm also bear on whether the movement was substantial. (*Martinez*, at pp. 235–237.)

The parties agree that the actual distance Doe was moved was approximately eight to ten feet. Although this is relatively short, no minimum distance is required (*Dominguez*, *supra*, 39 Cal.4th at p. 1152), and similar distances have been found sufficient. (See, e.g., *People v. Singh*, *supra*, 42 Cal.App.5th at pp. 187–188 [10 feet]; *People v. Corcoran* (2006) 143 Cal.App.4th 272, 278–279 [same]; *Shadden*, *supra*, 93 Cal.App.4th at p. 167 [nine feet].) And while the evidence bearing on the factors already discussed—such as whether the movement decreased the likelihood of detection and increased the opportunity to commit other crimes—is not strong, it is sufficient. A reasonable juror could conclude that dragging Doe from the small stall to the large stall was movement of a substantial distance because it took her farther from the restroom's exit and gave Waqa more room to maneuver, facilitating the rape and other potential crimes.

Waqa argues that the movement was merely incidental to the rape because "[i]t did not have any purpose other than to provide [him with] more room to engage in the act of forced sexual intercourse." Courts have struggled to articulate the meaning of "incidental" in this context, and the concept is "difficult to capture in a simple verbal formulation that would

17

apply to all cases." (*Dominguez*, *supra*, 39 Cal.4th at p. 1151.) What is clear, however, is that the relevant focus is on " 'the "scope and nature" of the movement,' as well as 'the context of the environment in which the movement occurred,' " not the defendant's purpose for moving the victim. (*Id.* at pp. 1151–1152, italics omitted; *In re Earley* (1975) 14 Cal.3d 122, 130; *People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1052.) "Standing alone, the fact that the movement of a . . . victim *facilitates* [the associated crime] does not imply that the movement was merely incidental to [that crime]." (*People v. James* (2007) 148 Cal.App.4th 446, 454; see *Dominguez*, at pp. 1151, 1153 [jury properly instructed that " 'movements to facilitate [a] rape that are for a substantial distance rather than brief [movements] . . . are not incidental to the commission of the rape' "].) The jury here could have reasonably inferred that the movement of Doe was of a substantial distance and thus not merely incidental to the rape, even if Waqa moved her primarily to facilitate the crime.

That Waqa did not need to move Doe to rape her further supports the conclusion that the movement was not merely incidental. " '[A] rape . . . does not necessarily require movement to complete the crime.' [Citation.] Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape" such that the movement was not incidental. (*Shadden*, *supra*, 93 Cal.App.4th at p. 169; see *People v. Aguilar*, *supra*, 120 Cal.App.4th at pp. 1050–1052 [explaining why movement's necessity to committing rape is relevant to whether movement was incidental to rape].) Here, there is no dispute that Waqa could have raped Doe in the small stall. Thus, even though the movement to the large stall facilitated the rape, there

18

was substantial evidence that the movement was not merely incidental to the crime.

> 4. We may reduce Waqa's sentence to 15 years to life.

Having concluded that substantial evidence supports the kidnapping circumstance but insufficient evidence supports the aggravated kidnapping circumstance, we turn to the appropriate disposition. The question we must resolve is whether we may modify the judgment to reflect a 15-year-to-life sentence based on the kidnapping circumstance instead of reversing the aggravated kidnapping circumstance outright. The Attorney General argues that we can, and Waqa argues that we cannot. We agree with the Attorney General.

To begin with, Waqa cannot be retried on the aggravated kidnapping circumstance. " 'The constitutional protection against double jeopardy unequivocally prohibits a second trial' . . . when a conviction is reversed or set aside because of insufficient evidence." (*People v. Anderson* (2009) 47 Cal.4th 92, 104.) This principle applies not just to convictions but also, "with the sole exception of facts relating to a prior conviction, '*any* fact that increases the penalty for a crime beyond the prescribed statutory maximum.' " (*Id.* at pp. 105–107, quoting *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) Because "a One Strike allegation exposes a defendant to greater punishment than would be authorized by a verdict on the offense alone," it is treated as "the functional equivalent of an element of a greater offense" that cannot be retried after a reversal for insufficient evidence. (*Anderson*, at pp. 106–108; *People v. Carbajal* (2013) 56 Cal.4th 521, 534 ["double jeopardy principles . . . apply to allegations under the One Strike law"].)

Under section 1260, an appellate court "may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or

19

attempted offense or the punishment imposed." This statute authorizes a court to "modify a verdict to reflect a conviction of a lesser included offense where insufficient evidence supports the conviction on the greater offense." (*People v. Navarro* (2007) 40 Cal.4th 668, 678.) Likewise, section 1260 "empower[s] courts to 'reduce the punishment in lieu of ordering a new trial, when there is error relating to the punishment imposed.' " (*Navarro*, at p. 679.) Consistent with this provision, appellate courts are authorized to substitute an unpled lesser included sentencing enhancement " 'when a greater enhancement found true by the trier of fact is either legally inapplicable or unsupported by sufficient evidence.' " (*People v. Tirado* (2022) 12 Cal.5th 688, 696; see, e.g., *People v. Fialho* (2014) 229 Cal.App.4th 1389, 1397–1399; *People v. Allen* (1985) 165 Cal.App.3d 616, 627.)

Since the One Strike law provides for punishment, section 1260 by its plain terms appears to authorize us to reduce the term based on the aggravated kidnapping circumstance to a term based on the kidnapping circumstance. "Although section 667.61 is an alternative sentencing scheme rather than an enhancement [citation], the aggravated kidnapping circumstance . . . is functionally equivalent to a conduct enhancement because it focuses on the manner in which the underlying offense was committed, rather than on the status of the offender." (*Kelly*, *supra*, 245 Cal.App.4th at p. 1131.)

To determine whether a lesser enhancement is necessarily included within a greater enhancement, we ask whether " 'the statutory elements of the greater [enhancement], or the facts actually alleged in the accusatory pleading, include all the elements of the lesser [enhancement], such that the greater cannot be committed without also committing the lesser.' " (*People v. Dixon* (2007) 153 Cal.App.4th 985, 1001–1002.) The aggravated kidnapping

circumstance applies when "[t]he defendant kidnapped the victim of the present offense *and* the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense." (§ 667.61(d)(2), italics added.) The kidnapping circumstance applies when, "[e]xcept as provided in [subdivision (d)(2)], the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5"—the only statutes that establish kidnapping offenses. (§ 667.61(e)(1); see §§ 207–210.) Thus, both circumstances require a kidnapping of the victim of the sex offense, meaning it is impossible to meet the elements of the aggravated kidnapping circumstance without also meeting the elements of the kidnapping circumstance.

Focusing on subdivision (e) of section 667.61 as a whole, Waqa claims that the statutory elements test is not met because most of the seven specific circumstances under that subdivision have elements that are not included in the aggravated kidnapping circumstance.[11] This is comparing apples to oranges. It is true that, for example, the circumstance under subdivision (e)(2) that the sex offense was committed during a burglary is not necessarily established if the aggravated kidnapping circumstance is. But particular "*circumstances* specified in subdivision (d) or (e)" must be "pled and proved" for One Strike punishment to be imposed (§ 667.61, subd. (f), italics added), not the fact that some unspecified qualifying circumstances

---

[11] Waqa also states in passing that simple kidnapping has a "different intent requirement[]" than the aggravated kidnapping circumstance, which is incorrect. Unlike kidnapping for rape or robbery, which requires a specific intent to commit the associated crime, simple kidnapping and the aggravated kidnapping circumstance require only general intent. (*People v. Bell*, *supra*, 179 Cal.App.4th at p. 435, fn. 2; *People v. Jones* (1997) 58 Cal.App.4th 693, 716–717.)

exist. Thus, it is of no moment that the aggravated kidnapping circumstance does not encompass the elements of *all* the circumstances under subdivision (e). What matters is that it encompasses all the elements of the kidnapping circumstance.

Waqa also claims that "unlike weapons enhancements," the One Strike law "is not subject to the rules pertaining to lesser included offenses." The two primary authorities on which he relies do not support his position. First, in *Mancebo*, the Supreme Court held that the One Strike law's pleading and proof requirements were violated where the trial court imposed multiple-victim circumstances that were not alleged. (*Mancebo*, *supra*, 27 Cal.4th at pp. 744–745, 754.) Although the information alleged crimes against two victims, the only One Strike circumstances alleged were gun use and kidnapping as to one crime, and gun use and tying or binding as to the other. (*Id.* at pp. 738, 740; § 667.61, subds. (a), (e)(1), (3), (5).)[12] The information also alleged that the defendant personally used a gun during the crimes under section 12022.5, subdivision (a). (*Mancebo*, at p. 740.) After the jury convicted the defendant of all the charges and allegations, the trial court sentenced him to "two consecutive 35-year-to-life terms . . . [for rape and sodomy] (25 years to life, plus a 10-year gun-use enhancement for each offense)[,] . . . in the belief that it could substitute the multiple victim circumstance . . . for the expressly pleaded gun-use circumstances in order to satisfy the 'minimum number of circumstances' requirement for One Strike sentencing (§ 667.61, subd. (f)), thereby making gun use available as a basis" for the personal-use firearm enhancements. (*Ibid.*)

---

[12] The One Strike law has been amended several times since *Mancebo* was decided. We cite to the current law, not the 2002 version.

*Mancebo* held that the trial court improperly substituted the multiple-victim circumstances for the gun-use circumstances because doing so violated section 667.61's "plain wording." (*Mancebo, supra*, 27 Cal.4th at p. 743.) Under current subdivision (o), which is similar to former subdivision (i) considered in *Mancebo*, "[t]he penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) *is alleged in the accusatory pleading* pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact." (§ 667.61, subd. (o), italics added; see *Mancebo*, at p. 743.) And under current subdivision (f), which is similar to former subdivision (f) considered in *Mancebo*, "[i]f only the minimum number of circumstances specified in subdivision (d) or (e) that are required for the punishment provided in subdivision (a) . . . [or] (b) . . . to apply *have been pled and proved*, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) . . . [or] (b) . . . [,] whichever is greater, rather than being used to impose the punishment authorized under any other law, unless another law provides for a greater penalty or the punishment under another law can be imposed in addition to the punishment provided by this section." (§ 667.61, subd. (f), italics added; see *Mancebo*, at pp. 743–744.) Although the *Mancebo* information alleged offenses against two different victims, it did not allege multiple-victim circumstances or refer to the relevant statutory provision, so "it failed to put [the] defendant on notice that the People . . . would seek to use [those circumstances] to secure . . . One Strike terms . . . *and* use the circumstance of gun use to secure additional enhancements under section 12022.5[, subdivision ](a)." (*Mancebo*, at p. 745.)

In *Anderson, supra*, 9 Cal.5th 946, the Supreme Court reversed firearm enhancements imposed "in connection with counts as to which [they] had not

23

been alleged." (*Id.* at p. 950.) In doing so, *Anderson* extended *Mancebo*'s reasoning to firearm enhancements under section 12022.53, which have similar statutory pleading requirements to those under the One Strike law. (*Anderson*, at pp. 953–955; see §§ 1170.1, subd. (e), 12022.53, subds. (e), (j).) Although the *Anderson* information alleged the relevant firearm enhancement in connection with a different count, it alleged lesser firearm enhancements in connection with the counts at issue, and this "failed to provide [the defendant] with fair notice" that the prosecution would seek the greater enhancements for those counts. (*Anderson*, at p. 957.)

Waqa claims that reducing the aggravated kidnapping circumstance to the kidnapping circumstance would "not be in conformity with principles of pleading and proof and the holdings in *Anderson* and [*Mancebo*]." But as he recognizes, *Anderson* and *Mancebo* are distinguishable because the uncharged enhancements in those decisions "would have resulted in a greater sentence than was charged." Here, in contrast, given Waqa's effective concession that the aggravated kidnapping circumstance was adequately pled despite the reference to subdivision (e) of section 667.61, the question is whether it is appropriate to impose a *lesser* punishment than that expressly charged. Thus, this case is more analogous to *Tirado* and other cases approving the imposition of "a lesser included, uncharged enhancement so long as the prosecution has charged the greater enhancement and the facts supporting imposition of the lesser enhancement have been alleged and found true." (*People v. Tirado, supra*, 12 Cal.5th at p. 697.)

Waqa also suggests that alleging circumstances requiring a 25-year-to-life term under section 667.61, subdivision (a), does not give fair notice that a 15-year-to-life term might apply under subdivision (b) of the statute, because subdivisions (a) and (b) are "mutually exclusive." He claims this is so because

24

the latter provision states that "*[e]xcept as provided in subdivision (a), . . . a person who is convicted of [a qualifying] offense . . . under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life.*" (§ 667.61, subd. (b), italics added.) But the italicized language means merely that if sufficient circumstances exist to require a 25-year-to-life term, that term must be imposed even if the requirements for a 15-year-to-life term are also met. For example, if "two or more circumstances in subdivision (e)" are established under subdivision (a), that necessarily means that "one of the circumstances specified in subdivision (e)" is established under subdivision (b), but the italicized language requires imposition of the greater sentence. Thus, the decision to charge under subdivision (a) does not suggest that subdivision (b) is inapplicable.

In sum, we see no reason that Waqa should avoid a One Strike sentence where the jury necessarily made a factual finding that satisfies a circumstance requiring a term of 15 years to life, that circumstance is a lesser included circumstance of the one found true, and that circumstance is supported by substantial evidence. Because a 15-year-to-life sentence is mandatory if a simple kidnapping is committed in conjunction with forcible rape and Waqa was not convicted of any other charges or enhancements, there is no need to remand for resentencing. Accordingly, we order the judgment modified to reflect a sentence of 15 years to life for the rape under section 667.61, subdivisions (b) and (e)(1).

B.   *Waqa's Claim of Prosecutorial Error Fails.*

Waqa also claims that the prosecutor misstated the law governing the "substantial distance" prong of the aggravated kidnapping circumstance in her closing argument. Specifically, he contends that the prosecutor

25

"essentially equated any movement not inherent in the act of sexual intercourse as meeting that requirement."[13] Waqa forfeited this claim by failing to object below, and it lacks merit in any event.

1.     Additional facts

The jury was instructed under a modified version of CALCRIM No. 3175 that one element of the aggravated kidnapping circumstance was that using force or fear, Waqa "moved Jane Doe or made her move a substantial distance." The instruction further stated, "As used here, *Substantial distance* means more than a slight or trivial distance. The movement must have increased the risk of physical or psychological harm to the person beyond that necessarily present in the rape. The movement must be more than merely incidental to the commission of [the rape]. In deciding whether the distance was substantial and whether the movement substantially increased the risk of harm, you must consider all the circumstances relating to the movement."

In closing argument, the prosecutor defined "substantial distance" as "something more than slight or trivial. . . . It's about the quali[t]y of the movement, not the quantity. [¶] The quantity, the amount of distance, 5 feet or 500 feet or 5 miles isn't as relevant as the value of the movement. What did the movement accomplish? That's what we're looking at. What's its purpose and what does it accomplish?" The prosecutor argued that Waqa had "[a] specific intent to move [Doe] to facilitate the rape that he intended." According to the prosecutor, "[h]ad there been no kidnapping, [Waqa] would

---

[13] Waqa also objects that the prosecutor misstated the law by saying that the aggravated kidnapping circumstance required an increase in the risk of harm, not a substantial increase in the risk of harm. Given our conclusion that there was insufficient evidence of a substantial increase in the risk of harm, we need not address this aspect of his argument.

26

have raped [Doe] right there [in the small stall]," but he moved her to the large stall so he would have more room "to move and maneuver and control." The prosecutor also contended that the movement had both physical and psychological "value" because Waqa was able to lock Doe inside the large stall, making it easier to control her and harder for her to escape.

The prosecutor also addressed the requirement that the movement not be incidental to the rape. She stated, "What are we talking about when we talk about incidental? Sex by definition is a dynamic act. It requires some amount of movement. There is movement natural in sexual intercourse. [¶] Movement incidental to sexual intercourse would be the movement that is natural to the act, okay?" According to the prosecutor, although Doe's struggling during the rape was incidental to the rape, "[m]oving her for purposes of accomplishing [Waqa's] act is not incidental to the crime. It's separate and apart. The above and beyond. It's more than what was necessary to rape her. . . . [¶] It was movement that is above and beyond to accomplish the psychological or physical goals."

###### 2. Analysis

Prosecutorial error is established, "as a matter of state law, when a prosecutor 'engage[s] in deceptive or reprehensible tactics in order to persuade the trier of fact to convict.' [Citation.] Federal constitutional error occurs only when the prosecutor's actions 'comprise a pattern of conduct that is serious and egregious, such that the trial is rendered so unfair that the resulting conviction violates the defendant's right to due process of law.' " (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 854.) " ' " 'It is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie

27

obligation to overcome reasonable doubt on all elements.' " ' " (*People v. Doane* (2021) 66 Cal.App.5th 965, 976.)

" 'To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Brown* (2003) 31 Cal.4th 518, 553–554.)

We agree with the Attorney General that Waqa forfeited this claim by failing to object below. Usually, to preserve a claim of prosecutorial error, " 'a defendant must make a timely objection and request an admonition; only if an admonition would not have cured the harm is the claim of misconduct preserved for review.' " (*People v. Friend* (2009) 47 Cal.4th 1, 29.) The failure to object or request an admonition may also be excused if doing so would have been futile. (*People v. Fayed* (2020) 9 Cal.5th 147, 204.) Waqa does not contest that he failed to object below, and he states only in passing that an objection would have been futile. Therefore, the claim is forfeited.

Even if we were to consider the claim on the merits, we would reject it. Waqa fails to convince us that the prosecutor misstated the law governing the substantial-distance prong of the aggravated kidnapping circumstance. The prosecutor correctly stated that the movement had to be more than trivial and more than that inherent in the rape itself. (*People v. Gomez, supra*, 6 Cal.5th at p. 304; *Dominguez, supra*, 39 Cal.4th at p. 1150.) She also correctly argued that the movement was substantial because it increased the risk of physical and psychological harm. (*Gomez*, at p. 304.) We do not see how the prosecutor's stray statement that the movement "facilitated the

28

rape" implied that "any movement that made the rape easier for the rapist" was sufficient to constitute a substantial distance. To the contrary, the prosecutor referred to appropriate factors in arguing that Doe was moved a substantial distance. No prosecutorial error occurred.

## III.
## DISPOSITION

The judgment is modified to reduce the sentence imposed for the rape of 25 years to life under Penal Code section 667.61, subdivisions (a) and (d)(2), to a term of 15 years to life under subdivisions (b) and (e)(1) of that statute. The trial court is directed to prepare an amended abstract of judgment reflecting this modification and correcting the date of conviction to July 27, 2021, and forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Bowen, J.*


*Judge of the Superior Court of the County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

_People v. Waqa_  A163761

30

Trial Court:

       Superior Court of the County of Sonoma


Trial Judge:

       Hon. Shelly J. Averill


Counsel:

       Peter F. Goldscheider, for Defendant and Appellant, under appointment by the Court of Appeal


       Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Charlotte Woodfork, Deputy Attorney General, for Plaintiff and Respondent

*People v. Waqa*  A163761