Filed 1/13/26  P. v. Anand CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084348 |
| v. | (Super.Ct.No. SWF2201663) |
| DEVNOL ANAND, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Stephen A. Marcus, Judge.  Affirmed.

Criminal Appeals Advocates, Kristen J. Mason, Aaron Spolin; Spolin & Dukes, Aaron Spolin, and Caitlin E. Dukes for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Anne Spitzberg, A. Natasha Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Devnol Anand of committing one count of aggravated kidnapping, one count of assault, and numerous sex offenses against his former fiancée. On appeal, Anand challenges the sufficiency of the evidence concerning the asportation and increased risk elements of the aggravated kidnapping count and the general sufficiency of the evidence supporting all of the convictions. In addition, he contends that the trial court made several erroneous evidentiary rulings, including the admission of evidence of uncharged prior acts of domestic violence and sex offenses under Evidence Code sections 1108, 1109, and 352. He also argues that his trial counsel rendered ineffective assistance by failing to object to the admission of certain evidence. We affirm.

## BACKGROUND

Anand was charged with having committed the following offenses against Jane Doe 1 (his former fiancée) on July 3, 2022: one count of aggravated kidnapping (Pen. Code, § 209, subd. (b)(1) (section 209(b)(1)); unlabeled statutory references are to this code), two counts of forcible rape (§ 261, subd. (a)(2)), two counts of forcible sexual penetration (§ 289, subd. (a)(1)), one count of forcible sodomy (§ 286, subd. (c)(2)(A)), one count of attempted forcible sodomy (§§ 286, subd. (c)(2)(A), 664), one count of forcible oral copulation (§ 287, subd. (c)(2)(A)), and one count of assault with the intent to commit rape, sodomy, oral copulation, or other enumerated offenses (§ 220, subd. (a)(1)).

2

I.      *Anand's relationship with Doe 1*

Doe 1 testified that she and Anand were involved in a romantic relationship for approximately five years starting in 2016 or 2017.  In 2020, they got engaged to be married, purchased a home, and started living together.  The couple did not share finances; Doe 1 gave Anand money monthly for the mortgage, paid the utility bills, and gave him money for property taxes.  Shortly after they moved in together, Anand installed 16 surveillance cameras inside the house.

Before Anand and Doe 1 lived together, there were no "problems" in the relationship and no physical violence between them.  Anand started treating Doe 1 differently in April 2022, when she refused to give him money to pay off his debt.  Anand turned into "a monster" and started physically abusing her.

Anand broke up with Doe 1 in early May 2022.  Doe 1 initially moved out of the house but returned a few days later and slept in a separate bedroom.  Anand told her that she would have to continue paying part of the mortgage if she moved out.  Anand took Doe 1's keys to the house and the mailbox, so she could enter the house only by using a garage door remote.

After they broke up, Doe 1 initially wanted to get back together with Anand.  Doe 1 continued to have consensual sex with Anand, but not all of their postbreakup sexual encounters were consensual.  Anand forced Doe 1 to have sex approximately two to three times per week.  He would enter her bedroom in the middle of the night while she was sleeping, take off her clothes, and have sex with her.  Doe 1 told Anand "no" and "always

3

fought back," but he did not listen and was bigger, taller, and stronger than she was. Doe 1 did not call the police, because she was afraid and ashamed.

On Memorial Day in 2022, Doe 1 threatened to call the police because Anand was withholding her mail. He grabbed her by the neck, yelled at her, dropped her to the floor, and wrapped an extension cord around her neck. She broke free, and he followed her into another room, where he threw her onto the floor. Anand threatened to hurt Doe 1's dogs if she called the police. He later shoved dog feces in the mouth of one of her dogs and locked the dog in a shed without water in 101-degree heat.

Doe 1 met Aziz A. at the gym in late June 2022, and they became friends. By the beginning of July 2022, she no longer wanted to be in a relationship with Anand. She had started looking for apartments, and Anand was aware of her efforts to move out.

On July 2, 2022, Doe 1 met with Aziz at a Starbucks and told him that Anand was abusing her and the dogs. Doe 1 was crying and panicked. Aziz offered to pay for a hotel, but Doe 1 declined the offer and went home that night because her dogs were at the house.

II. *Doe 1's report that Anand raped her*

The following afternoon, Anand and Doe 1 got into an argument at their home while she was talking on the phone with Aziz, who had called to check on her. During Doe 1's testimony, the People played a 33-minute video recording of the events that transpired after that argument. The exhibit contains recordings from several cameras located inside the house, garage, and backyard. The recordings do not have any audio.

4

The video shows Doe 1 and Anand sitting on the same couch in the living room and talking for several minutes; Doe 1's back is to the camera. Eventually she gave him the middle finger, and he responded by repeatedly touching her on the leg, arm, and face. She repeatedly pushed his arm away, but he persisted. Anand eventually grabbed Doe 1's arm and pressed his body onto hers while she kicked out her legs.

Anand grabbed Doe 1 and threw her onto the floor, where she lay on her back with him on top of her. He pulled off her shorts and underwear. She resisted, grabbed at her clothing, and attempted to push him away. She testified that while she was lying on the floor he inserted his fingers into her vagina against her will.

Doe 1 got up after about 20 seconds and ran into the backyard to scream for help. She did not care that she was half-naked; she felt safer outside. Doe 1 was outside on the covered back patio for about five seconds. Anand followed her, grabbed her, pushed her inside, and threw her to the ground. He shoved his fingers in her mouth and told her, "'I'm gonna fuck you how I fuck other bitches.'" He dragged her along the floor by her feet, and she begged him to stop.

Anand pulled Doe 1 up from the floor, bent her over a sofa, grabbed her by the neck, and held her down by pushing her face into the cushions. Doe 1 testified that Anand "raped" her "[m]ultiple times" by penetrating her vagina with his penis. Anand also attempted to penetrate her anus with his penis multiple times. Doe 1 felt pressure and pain on her anus, and Anand stopped when she complained.

For about six minutes, Anand moved Doe 1's body into various positions on the couch. He repeatedly pushed her, held her down, and grabbed her by the face, neck, and arms. She repeatedly attempted to push him away but did not succeed. At one point, Anand stopped and picked up his phone from a nearby table but then chased Doe 1 around the room when she tried to walk away. He then pushed her over the couch again. He later straddled her body and forced her mouth open so that she could orally copulate him. Doe 1 said that Anand's penis made contact with her lips or mouth. He got up from the couch less than one minute later, and she got dressed.

Doe 1 testified that the recording did not depict role playing or willing fulfillment of a rape fantasy. She told Anand "no" "[a]ll the time [she] was screaming." Doe 1 "was crying for help." Throughout the encounter, Anand told her that he was not doing anything to her and the acts were instead being perpetrated by "a demon."

After Doe 1 put on her clothes, she went into the backyard, where she sat and attempted to call her family, but they did not answer. She went back inside after about 10 minutes. Anand was lying on a couch. Doe 1 sat on another couch, and the two spoke. He told her that she "deserved it," and he asked if she was going to leave.

Doe 1 believed that Anand would not let her leave, so she picked up a can of bear spray, which a neighbor had given her for protection while walking her dogs. Anand went into the garage and took the garage door remote from inside Doe 1's car. Doe 1 tried to spray Anand with the bear spray but missed; he laughed. Doe 1 then got into her car with her dogs but could not leave without the remote, so she started the car and

6

honked the horn. Anand opened the garage door, and Doe 1 reversed the car most of the way out of the garage but did not immediately leave. Anand picked up a metal tool and threatened to kill Doe 1 if she did not get out of the car.

Doe 1 left. She called Aziz and told him that Anand had raped and beat her. Aziz told her to call the police, and she did. But she told the police only that she had fought with her boyfriend and that he forcibly digitally penetrated her. She did not describe everything that happened, because she worried they would not believe her. Doe 1 testified that she had minimized what happened when she talked to the police because she did not want anything bad to happen to Anand. But she told law enforcement about the surveillance cameras in her house.

III.    *Doe 1's subsequent conduct*

Several days after Doe 1 called the police, she spoke with a defense investigator. Doe 1 lied to the investigator, telling him that (1) Anand had never acted violently toward her or forced her to have sex, (2) she and Anand often had sex after they argued, (3) Anand did not use any force or violence against her on July 3, 2022, because it was consensual role play, and (4) Anand immediately stopped when she told him that it would be considered rape. Doe 1 told the defense investigator that she would talk to the district attorney because she did not want to press charges against Anand.

In September 2022, Anand's counsel called on Doe 1 to make a statement in court. Doe 1 essentially reiterated the same lies to the court that she had previously told the defense investigator.

7

Before the incident on July 3, 2022, Doe 1 had met Anand's parents only once. But after the incident, Anand's parents visited Doe 1 two to three times per week to bring her money, dog food and supplies, and household goods. They asked Doe 1 to drop the charges against Anand and to lie to the district attorney and the judge by telling them that everything that happened was normal. Doe 1 felt that Anand's parents' influence affected what she told investigators, the district attorney, and the court. Doe 1 called the police concerning Anand's parents in March 2023. She moved out of the house in June 2023.

At the preliminary hearing in May 2023, Doe 1 told the truth and testified that Anand raped her. Doe 1 was seeing a therapist several times per week, and she wanted to be truthful.

In May 2023, Doe 1 filed a civil lawsuit against Anand that stemmed from her belief that she had a possessory interest in the house. In May or June 2022, she had learned that she was not on the title to the house. She previously believed that she and Anand co-owned the house.

IV.  *Forensic medical examination*

On July 3, 2022, a sexual assault forensic nurse examined Doe 1. Doe 1 told the examiner that she did not know if her vagina or anus was ever penetrated or if her mouth ever made contact with Anand's penis. Doe 1 did not have any internal injuries, but the nurse testified that such injuries are found in only about 10 percent of sexual assault

examinations. The nurse photographed eight external injuries on Doe 1, including abrasions, redness, and scratches.

V.    *Doe 2's testimony*

Doe 2 was a previous romantic partner of Anand's. They dated for four years and lived together for about one year. Anand started dating Doe 1 while he was still in a relationship with Doe 2. Doe 2 testified only because she was subpoenaed. She did not want to testify, because she feared retaliation by Anand or his family.

At first, Anand was "a nice man, really caring" toward Doe 2, but that changed at some point when they were living together. He became aggressive and acted "physically" toward her on numerous occasions. Anand attempted to strangle Doe 2 twice. In 2019, when the two were no longer living together but in an "on and off" relationship, Anand broke into Doe 2's house and started choking her. Doe 2 got away from Anand and ran out the front door of the house, where a neighbor was standing nearby. Anand left, and Doe 2 called the police. She sought a restraining order against Anand.

During the last year that they dated, Anand repeatedly forced Doe 2 to have sex, even though she told him that she did not want to. Anand would forcibly hold down Doe 2 by her arms. Doe 2 never reported that Anand raped her, because she was afraid of him.

9

VI.    *The verdict*

The jury found Anand not guilty of sodomy and guilty of the seven remaining counts.  The court sentenced Anand to an aggregate term of 21 years to life in state prison.

DISCUSSION

I.    *Sufficiency of the evidence*

"In reviewing a sufficiency of the evidence claim, our role is limited.  We review the entire record to determine whether it discloses reasonable and credible evidence to allow a rational trier of fact to determine guilt beyond a reasonable doubt.  [Citation.] We draw all reasonable inferences in favor of the judgment.  [Citation.]  Matters of credibility of witnesses and the weight of the evidence are ""'the exclusive province'"" of the trier of fact."  (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 119, fn. 11 (*Cardenas*).)  "The uncorroborated testimony of a single witness is sufficient to sustain a conviction, unless the testimony is physically impossible or inherently improbable." (*People v. Scott* (1978) 21 Cal.3d 284, 296; *People v. Riggs* (2008) 44 Cal.4th 248, 317- 318 [rape victim's "testimony, if found credible by the jury, established that [the] defendant had forcibly raped her"].)

Anand contends that the evidence was insufficient to convict him.  In the portion of his opening brief in which he makes this argument, he does not argue that the evidence is insufficient for any particular count and he does not cite any of the statutory offenses or identify any elements of those offenses.  In his reply brief, he contends that he "has made

10

clear that his entire conviction, which centered on sexual offense allegations, was based on insufficient evidence, and this would include all seven counts."  But Anand again fails to identify the statutes for those counts or the elements of the offenses.  We consider the argument forfeited, because Anand has not properly developed it or supported it with reasoned legal argument with citation to legal authority.  (*People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*) [sufficiency of the evidence challenge forfeited because the appellant did "not specify how the evidence fails to support the verdict"]; *People v. Mitchell* (2008) 164 Cal.App.4th 442, 467 [undeveloped argument forfeited]; *People v. Tafoya* (2007) 42 Cal.4th 147, 196, fn. 12 [same].)  We will not develop Anand's argument for him.  (*Stanley*, at p. 793.)

Anand's substantial evidence argument also fails for an additional reason, independent of forfeiture.  Anand contends that the evidence is insufficient in three ways: (1) the video recording evidence was unreliable because it did not have an audio component, (2) there were many inconsistencies in Doe 1's account of the incident, and (3) there is no physical evidence of sexual abuse.  Those arguments are entirely about the weight of the evidence and Doe 1's credibility.  We do not reweigh the evidence or the credibility of witnesses on appeal.  (*Cardenas*, *supra*, 53 Cal.4th at p. 119, fn. 11.)  Those matters are exclusively for the jury to decide.  (*Ibid.*)

11

II.     *Aggravated kidnapping*

In addition to the general challenge concerning the sufficiency of the evidence supporting all of the convictions, Anand also contends that there is insufficient evidence that he kidnapped Doe 1 to commit rape. The contention lacks merit.

A person is guilty of aggravated kidnapping under section 209, subdivision (b), if the person "kidnaps or carries away an individual to commit . . . rape." (§ 209(b)(1).) Kidnapping for rape requires movement of the victim that is not merely incidental to the commission of the rape and that increases the risk of harm to the victim over and above that necessarily present in the crime of rape itself. (§ 209, subd. (b)(2); *People v. Martinez* (1999) 20 Cal.4th 225, 232, overruled on another ground in *People v. Fontenot* (2019) 8 Cal.5th 57, 70.) "These two aspects are not mutually exclusive, but interrelated." (*People v. Rayford* (1994) 9 Cal.4th 1, 12.)

With respect to the asportation element, "the jury considers the 'scope and nature' of the movement, which includes the actual distance a victim is moved. [Citations.] There is, however, no minimum distance a defendant must move a victim . . . ." (*People v. Vines* (2011) 51 Cal.4th 830, 870 (*Vines*), overruled on another ground by *People v. Hardy* (2018) 5 Cal.5th 56, 104.) As to the risk element, "the increased risk may be of either physical or psychological harm." (*People v. Robertson* (2012) 208 Cal.App.4th 965, 984 (*Robertson*).) The jury may consider "whether the movement gave the defendant 'the decreased likelihood of detection' and an 'enhanced opportunity to

12

commit additional crimes.'" (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168 (*Shadden*); *Robertson*, at p. 983.)

Anand challenges the sufficiency of the evidence supporting both elements. As to asportation, he contends that "the movement at issue was not substantial and was merely incidental to the alleged crimes" because he "dragged her only a short distance back into the house, returning her to the same location where the events initially transpired." The contention lacks merit. First, there is no minimum distance necessary to satisfy the asportation requirement. (*Vines*, *supra*, 51 Cal.4th at p. 870; *Robertson*, *supra*, 208 Cal.App.4th at pp. 984, 986; *People v. Dominguez* (2006) 39 Cal.4th 1141, 1152.) Second, substantial evidence shows that the movement was not merely incidental to the rape. (§ 209, subd. (b)(2).) Doe 1 ran outside half-naked to call out for help from her neighbors. Anand followed her and pushed her back inside the house, where he repeatedly raped her. A rape consists of "an attack on the person and does not necessarily require movement to complete the crime." (*People v. Salazar* (1995) 33 Cal.App.4th 341, 347, fn. 8.) Accordingly, when "'a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape.'" (*Robertson*, at p. 984.) The evidence was more than sufficient to support a finding beyond a reasonable doubt that Anand's movement of Doe 1 from the backyard into the house was not merely incidental to the rape.

There also is substantial evidence that Anand's movement of Doe 1 increased the risk of harm to her beyond the rape itself. A victim of rape "'is certainly more at risk when concealed from public view and therefore more vulnerable to attack.'" (*Robertson*, *supra*, 208 Cal.App.4th at p. 985.) Moving Doe 1 back into the house significantly decreased the likelihood of detection. She ran outside in order to get away from Anand and to call for help. By moving her back inside the house, Anand increased the risk of harm by enabling himself to rape her inside the house, which "made it less likely for others to discover the crime and decreased the odds of detection." (*Shadden*, *supra*, 93 Cal.App.4th at p. 170.)

For these reasons, we conclude that substantial evidence supports the jury's findings that Anand's forcible movement of Doe 1 from the backyard into the house was not merely incidental to the rape and increased the risk of harm.

III.    *Alleged evidentiary errors*

A.    *Prior acts evidence*

Anand argues that the trial court abused its discretion by admitting Doe 2's testimony. He contends that the prejudicial effect of the evidence substantially outweighed its probative value. We disagree.

The People moved to admit Doe 2's testimony about prior uncharged acts of domestic violence and sexual offenses under Evidence Code sections 1108 and 1109. Anand objected, and the trial court overruled the objection. Applying the balancing test under Evidence Code section 352, the court determined that the probative value of the

prior acts evidence substantially outweighed the risk of undue prejudice. The court

reasoned that the prior conduct was not remote and was relevant to the issue of Doe 1's

credibility on the issues of whether Anand acted violently toward her and raped her. The

court also reasoned that the testimony would not require undue consumption of time or

create substantial danger of confusing the issues or misleading the jury.

In general, "evidence of a person's character . . . is inadmissible when offered to

prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) The

general prohibition against admitting propensity evidence is subject to certain exceptions.

(*People v. Baker* (2021) 10 Cal.5th 1044, 1089 (*Baker*).) "Evidence Code section 1108

provides an exception to the general rule and permits evidence that a defendant accused

of a sexual offense has committed another sexual offense, potentially showing a

propensity to do so. (See *id.*, § 1108, subd. (a).) The exception set out in Evidence Code

section 1109 applies to certain evidence that a defendant accused of an offense involving

domestic violence has committed other domestic violence. (See *id.*, § 1109, subd. (a)(1).)

Both sections apply only if the evidence 'is not inadmissible pursuant to [Evidence Code]

Section 352.'" (*Baker*, at p. 1089.) "In the context of Evidence Code sections 1108 and

1109, a defendant's propensity to commit sexual offenses or domestic violence is not an

extraneous factor; it is relevant to the guilt of the accused—and evidence tending to show

that propensity has probative value." (*Ibid.*)

Evidence Code section 352 provides that a "court in its discretion may exclude

evidence if its probative value is substantially outweighed by the probability that its

15

admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against [the] defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging."'" (*People v. Bolin* (1998) 18 Cal.4th 297, 320; *People v. Barrett* (2025) 17 Cal.5th 897, 954-955 (*Barrett*).)

In analyzing whether to admit evidence of prior sex offenses or prior acts of domestic violence, "the trial court's determination should be guided by such factors as the 'nature, relevance, and possible remoteness' of the evidence, 'the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.'" (*People v. Dworak* (2021) 11 Cal.5th 881, 900 (*Dworak*), quoting *People v. Falsetta* (1999) 21 Cal.4th 903, 917; *People v. Thomas* (2021) 63 Cal.App.5th 612, 630.)

We review for abuse of discretion a trial court's ruling on the admissibility of propensity evidence under Evidence Code sections 1108, 1109, and 352. (*Dworak*, *supra*, 11 Cal.5th at p. 900; *People v. Megown* (2018) 28 Cal.App.5th 157, 164.)

Anand does not cite Evidence Code section 1108 or 1109 in either his opening brief or his reply brief, nor does he cite any case law to support his arguments on this issue. We consequently consider the unsupported argument forfeited. (*Stanley*, *supra*, 10 Cal.4th at p. 793 ["'[E]very brief should contain a legal argument with citation of authorities on the points made'"]; see also Cal. Rules of Court, rules 8.204(a)(1)(B) ["each point" in a brief must be supported "by argument and, if possible, by citation of authority"], 8.360(a) [briefs in criminal appeals "must comply" with the same rule].)

In any event, the trial court did not abuse its discretion. The probative value of the uncharged domestic violence and sex offense evidence was strong. There were significant similarities between the acts of domestic violence and rape that Doe 2 described and the charged offenses. Both women described domestic violence incidents in which Anand choked or strangled them, and the recording of the July 3, 2022, incident underlying the charged offenses shows Anand grab Doe 1 by her neck. In addition, both women described Anand forcing them to have sex while he was in a relationship with them. The similarities with the uncharged offenses "permitted the inference that [Anand] had a propensity to commit such sex offenses, including the charged crime[s]." (*People v. Cordova* (2015) 62 Cal.4th 104, 134.) And the uncharged conduct was not remote in time. Anand was still dating Doe 2 when he started dating Doe 1. Anand's propensity to rape his romantic partners and to act violently toward them, particularly by choking them, was relevant and highly probative of guilt. (*Baker*, *supra*, 10 Cal.5th at p. 1089.) In addition, the prior acts evidence also was relevant to Doe 1's credibility. By showing

17

that Anand had a propensity to act violently toward and rape women whom he dated, the evidence bolstered Doe 1's testimony that the recording did not depict a consensual role-playing sexual encounter.  (*Robertson*, *supra*, 208 Cal.App.4th at p. 993 ["Testimony that [the] appellant committed a similar sexual assault on another woman was relevant . . . to bolster the victim's credibility"].)

Given the evidence's strong probative value, "we cannot say that the trial court abused its discretion when it concluded that the danger of undue prejudice did not substantially outweigh the probative value of the testimony."  (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 826.)  The details of the prior conduct were no more inflammatory than the evidence of the charged offenses, so they were not likely to evoke any more emotional bias against Anand than the evidence of the charged offenses.  (*People v. Loy* (2011) 52 Cal.4th 46, 62 (*Loy*).)  Doe 2's testimony also did not consume an undue amount of time.  Her testimony is limited to 20 pages in the reporter's transcript.  Moreover, it is unlikely that the evidence about the prior acts confused or misled the jury.  The jury was presented with video recordings of the charged offenses involving Doe 1 but no such recordings of the prior acts involving Doe 2, and there is no reason to believe that the jury was likely to confuse the two sets of incidents.

Anand's arguments to the contrary are not persuasive.  He argues that because Doe 2's "testimony bore no direct connection to the charges at issue, its probative value was minimal at best," but the evidence was highly prejudicial because it "served to inflame the jury" and "biased the jury by painting [Anand] as a violent and bad person."

Similarly, he argues that "[t]he risk of undue prejudice was particularly high because the jury might have improperly used the testimony to conclude that [Anand] had a propensity for violence or sexual misconduct . . . ." All of those arguments fail as a matter of law. Evidence Code sections 1108 and 1109 permit admission of evidence of prior sex offenses and domestic violence in cases involving those issues *because* "a defendant's propensity to commit sexual offenses or domestic violence is not an extraneous factor; it is relevant to the guilt of the accused—and evidence tending to show that propensity has probative value." (*Baker*, *supra*, 10 Cal.5th at p. 1089.) Consequently, the prior acts evidence was relevant and highly probative of guilt. (*Barrett*, *supra*, 17 Cal.5th at p. 954.) That is not the type of prejudice that Evidence Code "'section 352 is designed to avoid.'" (*Barrett*, at p. 954.)

Anand also argues that the risk of prejudice was increased (or perhaps the probative value diminished) by "the unreliability" of Doe 2's testimony. He contends that the evidence was particularly unreliable because Doe 2 had a motive to lie or exaggerate about Anand's conduct because he broke up with her. The record does not support that argument. Doe 2 did not want to testify but rather was compelled to do so by subpoena. There was no evidence that Doe 2's testimony was motivated by vengeance. In any event, the jury was free to discredit Doe 2's testimony and thus to disregard the evidence altogether. The jury was instructed that it should consider the uncharged offense evidence only if it determined by a preponderance of the evidence that Anand committed the uncharged offenses. (CALCRIM Nos. 852A, 1191A.)

19

For all of these reasons, we conclude that the trial court did not abuse its discretion by admitting the prior acts evidence under Evidence Code sections 1108, 1109, and 352.

B.    *Testimony about Doe 1's prior relationship*

Anand argues that the trial court abused its discretion by not allowing defense counsel to question Doe 1 about a prior boyfriend. The argument lacks merit.

During cross-examination, defense counsel asked Doe 1 if she had a boyfriend when she went on a first date with Anand. The prosecutor objected on the basis of relevance. Outside the jury's presence, defense counsel proffered that testimony about Doe 1's prior boyfriend was relevant to the issues of Doe 1's memory and modus operandi. Defense counsel provided the following offer of proof: When Doe 1 "met with Mr. Anand, she actually asked him for assistance in, um, I guess terminating that relationship, which is uncannily similar to that contact at Starbucks that she had with" Aziz. The court excluded the testimony under Evidence Code section 352, finding both that it was not particularly relevant or probative and that it could mislead or confuse the jury.

"No evidence is admissible except relevant evidence." (Evid. Code, § 350.) "'"In reviewing the ruling of the trial court, we reiterate the well-established principle that 'the admissibility of this evidence has two components: (1) whether the challenged evidence satisfied the "relevancy" requirement set forth in Evidence Code section 210, and (2) if the evidence was relevant, whether the trial court abused its discretion under Evidence Code section 352 in finding that the probative value of the [evidence] was not

20

substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice.'"'" (*People v. Parker* (2022) 13 Cal.5th 1, 38.) "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) We review for abuse of discretion the trial court's ruling on relevance and admissibility under Evidence Code section 352. (*Parker*, at p. 39.)

The trial court did not err. The proffered evidence about how Doe 1 ended her prior relationship was not relevant. Nothing about the alleged fact that Doe 1 asked Anand for help in terminating her prior relationship has any bearing on a disputed fact, and it does not undermine Doe 1's credibility. The evidence was therefore inadmissible under Evidence Code section 350. (*People v. Brooks* (2017) 3 Cal.5th 1, 39 ["'"'we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm"'"'"].) And because irrelevant evidence has no probative value, the probative value of the proffered evidence could not outweigh any risk of prejudice, undue consumption of time, confusing the issues, or misleading the jury. For all of these reasons, the trial court did not abuse its discretion by excluding the evidence concerning Doe 1's prior relationship.

IV. *Ineffective assistance of counsel*

When Doe 1 started testifying about Anand's parents' conduct, the trial court overruled defense counsel's hearsay objection. Anand argues that his trial counsel

rendered ineffective assistance by failing to object to the testimony on the alternative ground that the prejudicial effect of the evidence outweighed its probative value under Evidence Code section 352. We disagree, because the record does not contain a declaration from Anand's trial counsel and there is a rational explanation for the failure to object.

To demonstrate ineffective assistance of counsel, Anand "'must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.'" (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165 (*Johnsen*); *Strickland v. Washington* (1984) 466 U.S. 668, 687.) "On direct appeal, a finding of deficient performance is warranted where '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.'" (*Johnsen*, at p. 1165.) If "'counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.'" (*Ibid.*)

The record does not affirmatively disclose why Anand's counsel did not object under Evidence Code section 352 to Doe 1's testimony about Anand's parents. Anand contends that "any competent criminal defense attorney would have recognized the critical importance of objecting under Evidence Code section 352," but we disagree. Trial counsel could have reasonably concluded that any objection under Evidence Code section 352 would have been futile. (*People v. Prince* (1991) 1 Cal.4th 324, 387 [counsel

22

not ineffective for failing to make "objections that counsel reasonably determines would be futile"].) The testimony that Anand's parents pressured Doe 1 to lie and to drop the charges against Anand bolstered Doe 1's credibility by helping explain the inconsistencies in her account of what happened before the preliminary hearing. Given those inconsistencies, evidence bearing on Doe 1's credibility was relevant and highly probative. (*Robertson*, *supra*, 208 Cal.App.4th at p. 993.)

Anand argues that the testimony "carried significant potential for prejudice by associating [Anand] with his parents' alleged misconduct and casting him in a negative light by implication," but we again disagree. Defense counsel could have reasonably concluded that there was minimal risk of Anand being prejudiced in that way. Doe 1 did not suggest that Anand's parents were acting in concert with Anand or at Anand's direction. And the details of Anand's parents' conduct were significantly less inflammatory than the evidence of the charged offenses. The evidence concerning his parent's conduct therefore was not likely to evoke any more emotional bias against Anand than the evidence of the charged offenses. (*Loy*, *supra*, 52 Cal.4th at p. 62.)

Because there is at least one conceivable tactical reason why defense counsel did not object under Evidence Code section 352 to the admission of Doe 1's testimony about Anand's parents, we conclude that Anand has failed to show that counsel's omission constituted ineffective assistance. (*Johnsen*, *supra*, 10 Cal.5th at p. 1165.)

23

V. *Cumulative error*

Anand contends that the combination of claimed errors raised in this appeal rendered his trial fundamentally unfair and thus requires reversal. "'[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.'" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.) Given our conclusion that there was no error, there was no cumulative error. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ      

J.

We concur:

McKINSTER    

    Acting P. J.

CODRINGTON    

    J.